Barbara **RITTENHOUSE,**
Plaintiff-Appellant,

v.

**DeKALB COUNTY, et al.,**
Defendants-Appellees,

**Karen Bullard, Defendant-Appellant.**

No. 84–8039.

United States Court of Appeals,
Eleventh Circuit.

July 9, 1985.

Pittman, Senior District Judge, sitting by designation, filed specially concurring opinion.

Charles B. Tanksley, Atlanta, Ga., for B. Rittenhouse.

D.W. Rolader, Roswell, Ga., for K. Bullard.

George P. Dillard, Stephen A. Friedman, Decatur, Ga., for DeKalb & Stewart.

Fred W. Ajax, Jr., Harvey S. Gray, Michael Rust, J. Loren Fowler, Atlanta, Ga., for City of Chamblee.

Before VANCE and ANDERSON, Circuit Judges, and PITTMAN *, Senior District Judge.

* Honorable Virgil Pittman, U.S. District Judge, Southern District of Alabama, sitting by designation.

R. LANIER ANDERSON, III, Circuit Judge:

The Supreme Court held in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that a prisoner's Fourteenth Amendment due process rights were not violated when prison officials negligently lost his property, since the prisoner had an adequate remedy available under state law to redress the wrong. In this appeal, we must first address the contention that the *Parratt* analysis does not apply because of the "established state procedure" exception. We reject that argument, and then address the question of whether a state law remedy is inadequate under *Parratt* if principal defendants are immune from suit. We hold that the state law remedy is adequate, notwithstanding the immunity.

## I. FACTS AND POSTURE

The incidents leading to this action occurred in the City of Chamblee, a municipal corporation in DeKalb County, Georgia. DeKalb County supplies water and sewer service to Chamblee. On December 15, 1981, at 9:18 p.m., a resident of Chamblee called the DeKalb County Water and Sewer Authority and reported that a water meter was leaking and that the flow from the meter was running onto a nearby road. The caller warned that the temperature was expected to go below freezing that night, and that the leaking water might freeze on the road. DeKalb County did not repair the meter, water from the leak froze on the road, and a car skidded at the site early the next morning and collided with another car. The wreck caused extensive damage to the cars, inflicted personal injury on several of the cars' occupants, and resulted in the tragic death of a son of one of the drivers.

Rittenhouse, driver of one of the cars, filed this § 1983 action [1] in federal district court alleging that her Fourteenth Amendment rights had been violated by DeKalb

1. 42 U.S.C.A. § 1983 (West 1981).

County, by C.L. Stewart, director of the County's water and sewer authority, and by the City of Chamblee. Rittenhouse also sought adjudication in federal court of her pendent state law negligence claim against Bullard, the driver of the car that had skidded out of control. DeKalb County and Stewart contended in their answer that the County and its officials enjoyed immunity from suit, that County officials had acted in good faith, and that there was no official policy, practice or custom that had led to the accident.[2]

The deposition testimony, when viewed most favorably to Rittenhouse, shows that DeKalb County road crews were not notified of the leaking meter. If the crews had been properly dispatched, however, they could have repaired the meter and salted the road, notwithstanding the pendency of other repair calls. The depositions further show that there is no common understanding among employees of the DeKalb County Water and Sewer Authority about how incoming repair calls are to be noted and referred to road crews for attention.

The district court granted DeKalb County and Stewart's motion for summary judgment on the grounds that "the allegations of tortious conduct ... do not rise to constitutional proportions and are thus not cognizable in a section 1983 action." 575 F.Supp. 1173 (D.Ga.1983). The district court was of the opinion that "the conduct of the local government complained of [must constitute] an abuse of power as a prerequisite to maintaining such an action." The court found that even if DeKalb County and Stewart had been negligent in failing to repair the leaking meter, they had acted in good faith, with the result that their action was not a sufficient abuse of power to raise an ordinary tort to the level of a constitutional violation. In

light of this ruling, the district court declined to entertain the pendent state claims, and found certain other pending motions to be moot. The district court thus dismissed all claims and entered final judgment, from which Rittenhouse and Bullard have appealed. The only issue on appeal is whether a valid § 1983 claim has been stated against DeKalb County and Stewart.[3]

## II. WHETHER THERE IS A VALID § 1983 CLAIM: THE APPLICABILITY OF *PARRATT*

■ We have no difficulty agreeing with the district court that defendants' conduct did not amount to an abuse of power or other substantive constitutional violation. We are left then only with the contention that DeKalb County and Stewart deprived appellants of constitutionally protected rights without due process of law. Although appellants made this procedural due process claim to the district court, the district court did not explicitly address the claim. Apparently, the court assumed that a § 1983 action could be maintained only if the conduct complained of were an abuse of power or a substantive constitutional violation. The Supreme Court made clear in *Parratt*, however, that merely negligent conduct can support a procedural due process claim if the state does not provide adequate postdeprivation remedies.

The conduct complained of in *Parratt* was the negligent loss by prison officials of a hobby kit a prisoner had ordered through the mail. The prisoner asserted that the prison officials had deprived him of property without due process of law in violation of the Fourteenth Amendment. In considering the viability of a § 1983 claim based on the officials' conduct, the Supreme Court observed that "[n]othing in the lan-

2. Bullard answered and filed cross-claims against DeKalb County, Stewart, and the City. The City answered and cross-claimed against DeKalb County and Stewart, and the latter two cross-claimed against the City. Both the City and Bullard seek indemnity against the County and Stewart, claiming that the acts or omissions of the County and Stewart were the ultimate cause of the deprivations at issue. The City of Chamblee, though nominally an appellee, takes

the same position as appellants on the issues before us on appeal.

3. Appellant Bullard concedes that all other claims were properly dismissed, if the district court was correct in dismissing the § 1983 claim. Brief of Karen Bullard at 9. Appellant Rittenhouse asserts on appeal only the § 1983 issue. Thus, we need not address any other issue on appeal:

guage of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights," 451 U.S. at 534, 101 S.Ct. at 1912, 68 L.Ed.2d at 427. The Court held that § 1983 affords a remedy "without any express requirement of a particular state of mind." *Id.* at 535, 101 S.Ct. at 1913, 68 L.Ed.2d at 428. The Court went on, however, and concluded that the state law remedies available to redress the prisoner's loss furnished him with all the process he was due under the Fourteenth Amendment, with the result that he failed to state a cause of action under § 1983. *Id.* at 542–43, 101 S.Ct. at 1916–17, 68 L.Ed.2d at 433–34.

Although the main thrust of appellants' argument on appeal is that sovereign immunity deprives them of an adequate state remedy, a more basic contention was mentioned in brief and pressed at oral argument, *i.e.*, that the deprivations complained of were caused by the County's procedures, and that this case thus falls within the "established state procedure" exception described in *Parratt*, so that the *Parratt* analysis concerning the adequacy of postdeprivation remedies is simply inapplicable. We turn first to this "established state procedure" argument.

### A. *The Established State Procedure Exception*

The Supreme Court recognized in *Parratt* that in many cases process must be provided prior to deprivation of a constitutionally protected interest. 451 U.S. at 537–41, 101 S.Ct. at 1913–16. In *Parratt*, however, the deprivation of property was "random and unauthorized" and predeprivation process was impracticable. *Id.* at 541, 101 S.Ct. at 1916. Since predeprivation process was not feasible, the Court held that the appropriate analysis for a procedural due process claim would focus on postdeprivation remedies. Thus, the Court assessed the postdeprivation tort claims procedures of the state, found them to be adequate, and concluded that the requirements of due process were satisfied. *Id.* at 543–44, 101 S.Ct. at 1916–17.

The "established state procedure" argument which appellants present finds its ori-

gin in dicta in the *Parratt* opinion, by which the Court distinguished that case from cases in which a deprivation has occurred as a result of some established state procedure. This distinction was the basis of the holding in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). There, an employee's discrimination claim was dismissed because a state agency failed to convene a conference on the case within the period of time that the state statute prescribed, and the state appellate court ruled that this deficiency was jurisdictional. The United States Supreme Court on direct appeal declined to apply *Parratt*, stating that the claimant was challenging "not the Commission's error, but the 'established state procedure' that destroys his entitlement without according him proper procedural safeguards." *Id.* at 436, 102 S.Ct. at 1158.

We conclude, however, that the instant case does not fall within this "established state procedure" exception. It is apparent both from *Parratt* itself and from its progeny that the rationale for the exception is that predeprivation process is feasible where the deprivation occurs as a result of an established state procedure. The discussion in *Parratt* of the matter of "established state procedure" is in the context of the feasibility of predeprivation process. *See* 451 U.S. at 537, 101 S.Ct. at 1914 ("In some cases this Court has held that due process requires a predeprivation hearing before the State interferes with any liberty or property interest enjoyed by its citizens. In most of these cases, however, the deprivation of property was pursuant to some established state procedure and 'process' could be offered before any actual deprivation took place"); *id.* at 541, 101 S.Ct. at 1916 ("In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place"); *id.* at 543, 101 S.Ct. at 1917 ("There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable

for the State to provide a predeprivation hearing"). Also, the cases which *Parratt* cites as examples of the "established state procedure" principle are all cases in which the established state procedure itself effected the deprivation, and predeprivation process was not only feasible, but was required. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (The Court struck down a New York statute that allowed a trust company, when it sought judicial settlement of its accounts, to give notice by publication; the Court required personal notice); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (requiring a personal hearing when a state statute provided for the taking of the driver's license of an uninsured motorist who had been involved in an accident); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (holding that due process required a prior hearing before a state authorized its agents to seize property in a debtor's possession).

Similarly in *Logan*, the state procedures that were challenged were themselves predeprivation procedures. Those procedures were tested against the requirements of procedural due process, and were found to be deficient. In *Hudson v. Palmer*, 468 U.S. ——, ——, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393, 407 (1984), the Supreme Court cited *Logan* as a reaffirmation of the *Parratt* holding, and explained the rationale of *Parratt* as follows: "We reasoned that where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur." *Id.* at ——, 104 S.Ct. at 3203, 82 L.Ed.2d at 406. Thus, the Court concluded that under the *Parratt* analysis, "the controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Id.* at ——, 104 S.Ct. at 3204, 82 L.Ed.2d at 408.

In like manner, the cases following *Parratt* in the various circuit courts of appeal have deemed the feasibility of predeprivation procedures as the central question in determining the applicability of *Parratt.* *Thibodeaux v. Bordelon*, 740 F.2d 329, 336 (5th Cir.1984) ("The central question in determining the applicability of *Parratt*, therefore, is whether it is practicable for the state to provide a predeprivation hearing"); *Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir.1984) ("the 'controlling question' in determining the applicability of *Parratt* is 'whether the State is in a position to provide for predeprivation process'" (quoting *Hudson v. Palmer*, 468 U.S. at ——, 104 S.Ct. at 3204, 82 L.Ed.2d at 408)); *see also Collins v. King*, 743 F.2d 248, 252 (5th Cir.1984).

On the basis of the foregoing authority, we conclude that the rationale underlying the "established state procedure" exception is that where a deprivation occurs pursuant to an established state procedure, predeprivation process is ordinarily feasible. Because predeprivation process is not feasible in the instant case, we conclude that the "established state procedure" exception does not apply and that the *Parratt* analysis requires that we focus only on the adequacy of postdeprivation remedies.

None of the parties in this case suggest that predeprivation process was feasible. There is no suggestion that the *purpose* of the challenged emergency procedures is to deprive anyone of anything, and the procedures cannot be said to *contemplate* the deprivation of any protected interest. At most, the deficient procedures might have been a contributing proximate cause of the accident, operating concurrently with other causes including the acts of the drivers of the vehicles. Thus, this case is distinguishable both from the cases cited in *Parratt* as requiring predeprivation process, *e.g.*, *Mullane v. Central Hanover Trust Co., supra; Bell v. Burson, supra;* and *Fuentes v. Shevin, supra,* and from the cases that have relied upon the "established state procedure" exception, *e.g.*, *Logan, supra; Augustine v. Doe, supra.* In all of these cases, it was the state statutes or procedures themselves that effected a deprivation, and it is obvious that in each instance predeprivation process would have been feasible. It is apparent, however, that no predeprivation remedies could have

been furnished Rittenhouse, because she became identified only upon the occurrence of the random accident in this case.[4] Thus, since predeprivation remedies were not feasible, the rationale of the "established state procedure"[5] exception is not satisfied in this case. As a result, the *Parratt* analysis applies, and the state can satisfy due process by providing adequate postdeprivation remedies.

Our conclusion in this case is reinforced by the recognition that a contrary holding would sap *Parratt* of all of its vitality. In *Parratt*, and in any similar case, a reason-

able argument could be made that better procedures would have prevented the deprivation. Appellant's argument in this case is nothing more than a contention that better procedures would have prevented the accident. If such a contention were sufficient to invoke the "established state procedure" exception and remove a case from *Parratt*, few instances would remain in which *Parratt* might apply. We do not believe, therefore, that the Supreme Court intended general allegations of administrative negligence to render the *Parratt* analysis inapplicable.[6] *Cf. Rizzo v. Goode*, 423

**4.** In some case, it might be argued that emergency procedures are so egregiously deficient that deprivations of protected interests are manifestly predictable, so that the situation more nearly resembles the "established state procedure" cases in which the purpose and contemplation of the state procedure involves deprivation of protected interests. In such a case, even though a particular plaintiff is not identified until the occurrence of the random contributing cause which accomplishes the deprivation, it might be argued that the governmental unit itself should have a duty *sua sponte* to correct the deficiencies, thus affording "predeprivation process." *See Parratt*, 451 U.S. at 546, 101 S.Ct. at 1918 (Blackmun, J., concurring) ("When it is possible for a State to institute procedures to contain and direct the intentional actions of its officials, it should be required, as a matter of due process, to do so."); *Hudson v. Palmer*, 468 U.S. at —— – —— n. 4, 104 S.Ct. at 3207–09 n. 4, 82 L.Ed.2d at 412–13 n. 4 (Stevens, J., joining the relevant part of the majority opinion on the understanding that it does not apply to cases "in which it is contended that the established prison procedures themselves create an unreasonable risk that prisoners will be unjustifiably deprived of their property."). We need not in this case decide whether due process places such an affirmative duty on a governmental unit. On the facts of this case, there could be no persuasive argument that the discretionary function here— involving the need for and nature of emergency procedures in the water department—was exercised by the County or Stewart in a manner so self-evidently deficient that deprivations were manifestly predictable, with the consequence that such predeprivation process would be feasible.

**5.** We distinguish "policy or custom" as the term was used in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), from the "established state procedure" that presents an exception to *Parratt*. In the first sense, the question is whether a municipality may be held vicariously liable in a case in which the actions of a subordinate employee are

conceded to constitute a violation of plaintiff's constitutional rights. *Monell* held that liability in such a case cannot be based on a theory of *respondeat superior*, but will be found only if the employee acted pursuant to an official "policy or custom." *Id.* at 694, 98 S.Ct. at 2037. Thus, under *Monell*, the relevant inquiry concerns whether an employee's misconduct is sufficiently connected to a "policy or custom" to warrant imposition of liability at the governmental level. By contrast, "established state procedure" in *Parratt* refers to the mechanism that effects a deprivation or contributes to cause a deprivation. As the discussion in text suggests, the relevant inquiry in this context is whether predeprivation process is feasible; in other words, whether process is feasible *before* the "established state procedure" effects (or contributes to) the deprivation. The two concepts are sufficiently different to warrant recognition of this distinction. *Cf. Hull v. City of Duncanville*, 678 F.2d 582, 584 (5th Cir.1982) (Given that the "action pursuant to official municipal policy of some nature caused a *constitutional tort*," the court characterized *Monell* as a holding "simply concerned [with] whether a municipality itself could be held liable under such circumstances.").

**6.** *But cf. Marshall v. Norwood*, 741 F.2d 761, 763 (5th Cir.1984) (in dicta, the court observed that an established state procedure that recklessly disregards prisoners' property during searches would support a cognizable Fourteenth Amendment claim); *Pantoja v. City of Gonzales*, 538 F.Supp. 335, 338 (N.D.Cal.1982) (inadequate training of police officers is included among the "established state procedures" that make *Parratt* inapplicable). The situations presented in these cases, however, may have approached the egregiously deficient procedure discussed in note 4, *supra*, and thus involved the issue left open there of whether due process imposes on governmental units some affirmative duty to remedy procedures which are self-evidently and egregiously risk producing.

U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Hull v. City of Duncanville*, 678 F.2d 582 (5th Cir.1982).

We conclude that predeprivation process was not feasible in this case, and thus that the "established state procedure" exception does not apply. Rittenhouse therefore must make out her § 1983 claim, if at all, pursuant to a *Parratt* assessment of the postdeprivation remedies available to her. More particularly, the viability of her § 1983 action depends on whether her postdeprivation remedies are adequate to satisfy due process. We turn, therefore, to consider whether, in light of Georgia's immunity rules, Rittenhouse has an adequate postdeprivation remedy under state law.

## B. *The Effect of Immunity on the Adequacy of State Law Remedies*

DeKalb County is immune from suit for negligence under Georgia law. Ga.Code Ann. § 36–1–4 (Michie 1982); *see also* Ga. Const. Art. I, § 2, ¶ 9; *Miree v. United States*, 242 Ga. 126, 249 S.E.2d 573 (1978). Although the immunity a county officer enjoys apparently is not as absolute, the parties agree before this court that Stewart, as director of the County's water and sewer authority, is immune from suit for the negligence Rittenhouse has alleged. *See Hennessy v. Webb*, 245 Ga. 329, 264 S.E.2d 878 (1980). These state law immunities call into question whether Rittenhouse has an adequate state remedy and hence whether under *Parratt* a § 1983 action is cognizable in the first instance.[7]

7. If the state remedy were inadequate and a § 1983 action could be maintained, the question would remain whether the County or Stewart were immune under § 1983 jurisprudence. The Supreme Court has held that Congress did not intend to abolish common law immunities when it enacted § 1983. *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978). Generally, immunities have been retained . if they were well established at common law at the time § 1983 was enacted, and if their rationale were compatible with the purposes of the Civil Rights Act. *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980). Once a viable § 1983 ac-

We face apparently conflicting indications in Supreme Court authority as to whether state law immunity renders a state remedy inadequate. In *Parratt*, the Court noted that Nebraska furnished a tort claims procedure that satisfied the requirements of due process. 451 U.S. at 544, 101 S.Ct. at 1917. One might infer from this that in the absence of a remedy in fact, the Court would have considered the Nebraska procedures inadequate.[8] Such an inference is strongly supported by the recent case of *Hudson v. Palmer*, 468 U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), in which the Court found the state remedies to be adequate only after establishing that applicable state law did not afford immunity. *Id.* at —— & n. 15, 104 S.Ct. at 3205 & n. 15, 82 L.Ed.2d at 409 & n. 15. *See also Thibodeaux v. Bordelon*, 740 F.2d 329, 339 & n. 10 (5th Cir.1984); *Williams v. Morris*, 697 F.2d 1349, 1351 & n. 5 (10th Cir.1982).

However compelling these inferences may be, they are only inferences, and are overborne in our view by the Court's holding in *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). In *Martinez*, the survivors of a girl killed by a parolee sought damages under state law from parole officials who had decided to release the parolee. A California statute insulated public entities and employees from liability for parole decisions. *Id.* at 280, 100 S.Ct. at 556. The Court upheld the immunity statute against the contention that it deprived the plaintiffs of their

tion has been established, however, state immunity rules will not shield defendants from liability. *Id.* at 647 n. 30, 100 S.Ct. at 1413 n. 30; *Martinez v. California*, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980); *see also Monell v. Department of Social Services*, 436 U.S. 658, 695 n. 59, 701, 98 S.Ct. 2018, 2038 n. 59, 2041, 56 L.Ed.2d 611 (1978).

8. Justice Powell reached this conclusion in his separate opinion in *Parratt*. "If ... immunity has the effect of cutting off all state-law remedies, under the Court's reasoning there appears to be a deprivation of procedural due process, actionable in federal court." 451 U.S. at 551 n. 9, 101 S.Ct. at 1921 n. 9 (Powell, J., concurring in the result).

wrongful death action without due process of law.

> [E]ven if one characterizes the immunity defense as a statutory deprivation, it would remain true that the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational.
>
> ... We therefore find no merit in the contention that the State's immunity statute is unconstitutional when applied to defeat a tort claim arising under state law.

*Id.* at 282–83, 100 S.Ct. at 557–58. We read *Martinez* as establishing that a state does not deny procedural due process simply by granting reasonable tort immunity to state entities and officials.

*Martinez* indicates that a state law immunity scheme could conceivably result in "state action that is wholly arbitrary or irrational" and which thus violates the Fourteenth Amendment. We can readily conclude, however, that the immunity DeKalb County and Stewart enjoy under Georgia law is not arbitrary and irrational so as to implicate procedural due process concerns. The immunity in question shields the County and its officials from liability for a purely discretionary function involving the necessity for and nature of procedures for handling emergency matters in the water department. Such traditional governmental immunity is in no sense "arbitrary or irrational" and consequently, under *Martinez,* the Georgia immunity rules do not in themselves deny procedural due process.

 We can discern no meaningful distinction between the conclusion in *Martinez* that immunity rules do not in themselves deny due process, and our conclusion here that they do not deny due process by virtue of making state remedies inadequate under *Parratt.* The constitutional question in either view is whether the state procedures, in light of the immunity, provide the process required under the Fourteenth Amendment. *See Parratt v. Taylor,* 451 U.S. at 537, 101 S.Ct. at 1914. The Supreme Court decided in *Martinez* that they do. 444 U.S. 282–83, 100 S.Ct. at 557–58.[9]

*Martinez* was decided before *Parratt,* and it might be argued that *Parratt* and *Hudson* implicitly modify its holding on immunity. We find a direct indication to the contrary, however, in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). As discussed in Part II.A., *supra,* the Court in *Logan* did not assess the adequacy of post-deprivation state remedies because the plaintiff had been deprived of his cause of action through the state's own procedural rules, a feature that distinguished the case from *Parratt* and made any postdeprivation remedy unavailing for due process purposes. *Id.* at 435–36, 102 S.Ct. at 1157–58. In concluding, however, that the state's procedural bar was unconstitutional, the Court emphasized that "the State remains free to create substantive defenses or immunities for use in adjudication." *Id.* at 432, 102 S.Ct. at 1156. This dicta from *Logan* is some indication that when the Supreme Court decided *Parratt,* it did not intend to abrogate state immunity rules on due process grounds. Even without this indication, however, we would be reluctant to conclude that the Supreme Court had departed from *Martinez* and displaced a prominent and longstanding feature of state tort law without a holding expressly directed to the question.

---

**9.** The Supreme Court was presented with two claims in *Martinez*—the Fourteenth Amendment challenge already discussed, which concerned the viability of a state law wrongful death action in the face of an immunity statute, and a separate § 1983 claim under federal law against the state parole officials. The Court disposed of the § 1983 claim on the ground that the parolee's action in committing the murder was "too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." 444 U.S. at 285, 100 S.Ct. at 559. Thus the Court was not presented with the question, later decided in *Parratt,* of whether a plaintiff may be relegated to remedies under state law if those remedies are constitutionally adequate.

The only circuit court of appeals case we have found on point reaches the same conclusion we reach with respect to state law immunity. In *Daniels v. Williams,* 720 F.2d 792 (4th Cir.1983), the court was unable to predict whether sovereign immunity would shield a deputy sheriff from liability and therefore addressed the question whether the availability of immunity would render the state remedy inadequate under *Parratt.* The court could find no basis for distinguishing sovereign immunity from other affirmative defenses, and concluded that the plaintiff's opportunity to adjudicate the question was an "adequate remedy" under *Parratt* even assuming that an immunity defense would defeat the claim. *Id.* at 797–99.

## CONCLUSION

We conclude that the "established state procedure" exception does not apply, and therefore that the *Parratt* analysis is applicable. We further conclude that the sovereign immunity enjoyed by DeKalb County and Stewart do not render appellant's state law remedy inadequate under *Parratt.* Consequently appellant was not deprived of her rights without due process of law. As a result, she has not stated an actionable claim under § 1983, and the district court did not err in granting summary judgment. The judgment of the district court is

AFFIRMED.

PITTMAN, District Judge, specially concurring:

I concur in the conclusion reached by the court. The action brought by the appellants in this case amounts to nothing more than a tort suit against the county. The fact that the allegedly tortious conduct was committed by state officials acting under color of law does not make the appellants' injury a violation of the fourteenth amendment actionable under § 1983. The Supreme Court in *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), warned against making the fourteenth amendment "a font of tort law." *Id.* at 544, 101 S.Ct. at 1917 (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)). Under the rationale advanced by the plaintiff in *Parratt,* the Court stated, "[A]ny party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983." *Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917. The case at bar is just such a case: the plaintiffs allege a constitutional deprivation merely on the grounds that county officials negligently caused an automobile accident in which the plaintiffs were injured. The Supreme Court stated in *Parratt* that "[w]e do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society." *Id.*

Justice Stewart in a concurrence stated that tortious conduct of the kind alleged by the plaintiff in this case is not the type of conduct that the Constitution sought to prohibit. *See id.* at 544–45, 101 S.Ct. at 1917–18 (Stewart, J., concurring.)