[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-12401

_____

MARY PENELOPE LAKOSKEY,
AMOS LOVETT,

Plaintiffs-Appellants,

*versus*

BONIFACIO FLORO,
Individually: Dr.,
HEATHER WALSH-HANEY,
Individually: Dr.,
MARGARITA ARRUZA,
Individually: Dr.,
VALERIE J. RAO,
Individually: Dr.,
OFFICE OF THE MEDICAL EXAMINER FOR DISTRICT FOUR,

2                    Opinion of the Court                    19-12401

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cv-01421-BJD-JRK

_____

Before BRANCH, LUCK, and ED CARNES, Circuit Judges.

LUCK, Circuit Judge:

"[M]y heart's best treasure was no more . . . ."[1]

To bury a parent is sad but inevitable. But no parent should ever have to bury her child. That kind of loss is tragic and unforgettable. Unfortunately, that is what Mary Lakoskey had to endure, and she had to endure it twice—first, when her daughter Tina was murdered, and then, over three decades later, when she learned that the medical examiner's office had retained some of Tina's remains without Ms. Lakoskey's knowledge or permission. Burying her daughter a second time "opened deep psychological

_____

[1] William Wordsworth, Surprised by Joy (1815), *reprinted in* The Art of the Sonnet 113, 113 (Stephen Burt & David Mikics eds., 2010) (noting that the poem "responds to the loss of William Wordsworth's daughter Catherine, who died suddenly at age four").

wounds" for Ms. Lakoskey "that had been clos[ed] for over three decades."

For her trauma, Ms. Lakoskey sued three medical examiners, a consultant for the medical examiner's office, and the office itself. Ms. Lakoskey alleged state law claims for outrageous infliction of emotional distress against the four individual defendants. And she brought 42 U.S.C. section 1983 claims against all the defendants for violating her procedural due process rights by depriving her of her constitutionally protected property interest in her daughter's remains without due process of law.[2] The district court dismissed the section 1983 claims, concluding that Ms. Lakoskey wasn't denied procedural due process because state tort law provided an adequate postdeprivation process for remedying the violations of her property rights to her daughter's remains. With the federal claims dismissed, the district court declined to exercise supplemental jurisdiction over the state law claims and remanded them to the state court. We affirm.

## FACTUAL BACKGROUND

April 21, 1984 was a stressful day for Ms. Lakoskey. Her seventeen-year-old daughter, Tina Lovett, went missing. That stress soon turned to heartrending grief as a little over two weeks later, law enforcement found her daughter face down, naked, and dead

---

[2] Tina's brother, Amos Lovett, was a co-plaintiff and joins Ms. Lakoskey in this appeal. For ease of reference, we refer to Ms. Lakoskey throughout this opinion as representing his interests in addition to her own.

at the end of an unnamed dirt road in an area used as a dumping ground. The body was highly decomposed. The news of Tina's death sent Ms. Lakoskey into shock and triggered a mental breakdown requiring hospitalization.

Unaware of the manner or cause of death, law enforcement transferred Tina's body to the medical examiner's office in Jacksonville, Florida. The medical examiner at the time, Dr. Bonifacio Floro, took custody of the body. Dr. Floro was able to determine the manner of death—homicide—but not the cause of death due to the body's highly decomposed state. Three days after law enforcement found the body, Ms. Lakoskey signed a release authorizing the medical examiner, "upon conclusion of his duties," to deliver Tina's remains to a funeral home. Around that time, Dr. Floro delivered some of the remains to the funeral home, but, unbeknownst to Ms. Lakoskey, retained the rest. As a result, Ms. Lakoskey unknowingly buried only some—but not all—of Tina's remains following her 1984 funeral.

Over the years, medical examiners Dr. Floro, Dr. Margarita Arruza, and Dr. Valerie Rao and consultant Dr. Heather Walsh-Haney passed the rest of Tina's remains back and forth between the medical examiner's office, the University of Florida, and Florida Gulf Coast University. Dr. Floro, the original medical examiner when Tina was murdered, kept her remains for nearly eight years, and then he gave them to the University of Florida. The University of Florida had them for a little more than eight years, and then Dr. Walsh-Haney, as a University of Florida employee, gave them to

Dr. Arruza, who by then was the medical examiner. Dr. Arruza had them for a little over five years, at which point she returned them to Dr. Walsh-Haney, who was now working for Florida Gulf Coast University. Dr. Walsh-Haney had them for eleven years and then gave them to Dr. Rao, who was the new medical examiner. And Dr. Rao had them for one year before she notified Ms. Lakoskey that the medical examiner's office still possessed some of Tina's remains. Until then, no one had provided notice or obtained permission from Ms. Lakoskey or any other family member to keep any of the remains.

After thirty-three years, Ms. Lakoskey got the rest of her daughter's remains back. Dr. Rao released them to a funeral home, and on August 31, 2018, Ms. Lakoskey and other family members stood witness as funeral staff dug up Tina's grave, brought her casket to the funeral home, and placed the old remains together with the newly discovered remains in a new casket. Ms. Lakoskey and other family members then held a second funeral and re-buried Tina.

## PROCEDURAL HISTORY

On October 17, 2018, Ms. Lakoskey filed a complaint in state court against Drs. Floro, Arruza, Walsh-Haney, and Rao and the medical examiner's office. She alleged that the defendants violated section 1983 by depriving her of her constitutionally protected property interest in her daughter's remains without due process of law. She also brought outrageous infliction of emotional distress claims against the individual defendants under Florida common

law.  She sought compensatory and punitive damages for all claims and also attorney's fees and costs for the section 1983 claims.

The defendants removed the case to the Middle District of Florida and moved to dismiss the complaint.  They argued that Ms. Lakoskey could not make out a procedural due process claim because she had an adequate postdeprivation state law tort remedy. The individual defendants also argued that they were entitled to qualified immunity on the procedural due process claims.  Drs. Floro, Arruza, and Rao added that they were entitled to sovereign immunity on the state law claims, see Fla. Stat. § 768.28(9)(a), and Dr. Walsh-Haney added that, with respect to the procedural due process claim against her, she had no legal duty to notify Ms. Lakoskey when accepting, storing, or returning Tina's remains.

The medical examiner's office maintained that it was a state agency entitled to Eleventh Amendment immunity.  And it further asserted that the allegations in the complaint did not satisfy the "policy or custom" requirement for municipal liability under section 1983.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

The district court granted the dismissal motions.  As to the section 1983 procedural due process claims, the district court dismissed them because Ms. Lakoskey had an adequate postdeprivation tort remedy.  "[A]t least some adequate post[]deprivation remedy [wa]s available to [Ms. Lakoskey] and thus," the district court reasoned, "no procedural due process violation ha[d] occurred." As alternative grounds, the district court dismissed the section 1983

procedural due process claims against the individual defendants based on qualified immunity (because Ms. Lakoskey failed to show that "a right to a decedent's remains was clearly established at the time of the violation"). And the district court dismissed the section 1983 claim against the medical examiner's office because the complaint was "devoid of allegations" of the office's "policies or customs." Having dismissed the federal claims, the district court declined to exercise supplemental jurisdiction over the state law claims and remanded them to state court.

Ms. Lakoskey appeals the dismissal of her section 1983 procedural due process claims against Drs. Floro, Azzura, Walsh-Haney, and Rao and the medical examiner's office.[3]

## STANDARD OF REVIEW

We review de novo a district court's order granting a motion to dismiss, accepting the complaint's well-pleaded factual allegations as true and "draw[ing] all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[3] Ms. Lakoskey does not appeal the part of the district court's order remanding the state law claims.

## DISCUSSION

Ms. Lakoskey contends that, in three ways, the district court erred in dismissing her section 1983 procedural due process claims. First, she argues, the district court erred by concluding that Drs. Floro, Arruza, Walsh-Haney, and Rao were entitled to qualified immunity because Ms. Lakoskey's right to her daughter's remains was not clearly established. Second, Ms. Lakoskey asserts, the district court erred by concluding that she did not allege the medical examiner's office had a custom or policy of depriving loved ones of their family members' remains. And third, Ms. Lakoskey argues, the district court erred by concluding that her procedural due process rights were not violated because she had an adequate postdeprivation tort remedy.

We focus on this last argument because "a [section] 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). If Ms. Lakoskey had a constitutionally adequate process to remedy the deprivation of her property interest in her daughter's remains, then she has not been denied procedural due process and we don't have to decide the qualified immunity or municipal liability issue. *See Ross v. Clayton County*, 173 F.3d 1305, 1310 (11th Cir. 1999) ("The fact that [the plaintiff's] constitutional due process rights were not violated . . . obviates the qualified immunity issue . . . ."); *Myers v. Klevenhagen*, 97 F.3d 91, 96 (5th Cir. 1996) (per

curiam) ("[B]ecause a postdeprivation state remedy existed, which the plaintiffs have failed to show was inadequate, [the plaintiffs have failed] to state an actionable constitutional claim under section 1983. Having found no constitutional violation on this record, we need not reach the issue of qualified immunity or the other remaining issues raised by the parties in their briefs.").

As to the constitutionally inadequate process element, Ms. Lakoskey argues "that the continued retention of [her] personal property"—her daughter's remains—"violate[d] [her] procedural due process rights." *See Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991). But, "[e]ven assuming the continued retention of [her] personal property [wa]s wrongful, no procedural due process violation has occurred 'if a meaningful postdeprivation remedy for the loss is available.'" *See id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). This is because "the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Id.* (quoting *Hudson*, 468 U.S. at 533). "[A]s long as *some* adequate postdeprivation remedy is available, no due process violation has occurred," *id.* (citing *Hudson*, 468 U.S. at 533), because "the state may cure a procedural deprivation by providing a later procedural remedy," *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc). "[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Id.*

Ms. Lakoskey "ha[s] failed to state a valid procedural due process claim because [she] ha[s] not alleged that [Florida] law

provided [her] with an inadequate post[]deprivation remedy." *See Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) (per curiam). Her complaint, in fact, alleged the opposite:  that she had an adequate postdeprivation remedy for violations of her property interest in her daughter's remains.  Ms. Lakoskey alleged that Drs. Floro, Arruza, Walsh-Haney, and Rao's outrageous conduct in keeping the remains caused her severe emotional distress that was actionable under Florida tort law.

We've "held that a judicial post[]deprivation cause of action satisfies due process." *Carcamo v. Miami-Dade County*, 375 F.3d 1104, 1106 (11th Cir. 2004) (per curiam); *accord Tinney*, 77 F.3d at 381–82 ("[T]he state tort remedies available to the prisoner satisfied the prisoner's due process rights because due process does not require a pre[]deprivation hearing where such a hearing would be impracticable—i.e., where the deprivation results from an employee's negligent act.").  Even if "the state's remedial procedure [does] not provide all relief available under section 1983," "as long as the remedy 'could have fully compensated [Ms. Lakoskey] for the property loss [s]he suffered,' the remedy satisfies procedural due process." *See McKinney*, 20 F.3d at 1564 (quoting *Parratt v. Taylor*, 451 U.S. 527, 544 (1981)).

Ms. Lakoskey's complaint seeks essentially the same relief—mainly compensatory and punitive damages—for her procedural due process claims as she does for her outrageous infliction of emotional distress claims against the same individual defendants for the same conduct.  Her complaint shows that she has an adequate

postdeprivation remedy available to her:  the tort claims she brought alongside her section 1983 claims.  And Florida law recognizes the cause of action Ms. Lakoskey alleged in her complaint—outrageous infliction of emotional distress when the alleged misconduct involves a dead body.  *See Williams v. City of Minneola*, 575 So. 2d 683, 694 (Fla. Dist. Ct. App. 1991); *see also Crocker v. Pleasant*, 778 So. 2d 978, 982 (Fla. 2001) (negligent handling of a dead body); *Kirksey v. Jernigan*, 45 So. 2d 188, 189 (Fla. 1950) (tortious interference with a dead body); *Andrews v. McGowan*, 739 So. 2d 132, 134 (Fla. Dist. Ct. App. 1999) (conversion).

Ms. Lakoskey argues, quoting *Zinermon v. Burch*, 494 U.S. 113 (1990), that "[i]n situations where the [s]tate feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *See id.* at 132.  But, as the Supreme Court explained in *Parratt* and *Hudson*, "an unauthorized intentional"—or even "negligent"—"deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the 14th Amendment if a meaningful post[]deprivation remedy for the loss is available." *Tinney*, 77 F.3d at 381–82 (emphasis omitted) (quoting *Hudson*, 468 U.S. at 533 and citing *Parratt*, 451 U.S. at 537–38).  "Pre[]deprivation process is impractical 'where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure,' because 'the state cannot know when such deprivations will occur.'"  *Nat'l Ass'n of Bds. of*

*Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1317 (11th Cir. 2011) (quoting *Hudson*, 468 U.S. at 532–33).

Here, Ms. Lakoskey alleged in her complaint that Drs. Floro, Arruza, Walsh-Haney, and Rao acted negligently or intentionally when they deprived her of her daughter's remains. For Dr. Floro, for example, Ms. Lakoskey claimed that he released some of Tina's remains "upon conclusion of his duties with respect to [her] body," but retained the rest of the remains without informing Ms. Lakoskey or getting her permission. Dr. Floro kept Tina's remains for nearly eight years, Ms. Lakoskey continued, until he released them to the University of Florida. But, by then, there was "no investigation or prosecution" into Tina's murder, and Florida law "prohibit[ed] such institutions from receiving remains for such purposes." According to the complaint, Dr. Floro acted "outrageously or recklessly" when he "misrepresented" to Ms. Lakoskey that she was receiving all of Tina's remains when, in fact, he "maintained the majority of [the] remains in his possession," and then gave them to the University of Florida, with "no lawful purpose."

For Dr. Arruza, the complaint alleged that she received Tina's remains from the University of Florida and "retained possession" of them for over five years without giving notice or getting permission from Ms. Lakoskey at any time. Dr. Arruza did so, the complaint asserted, even though retaining possession of the remains without notice or permission "was explicitly proscribed by Florida law." After five years, Dr. Arruza transferred Tina's remains to Dr. Walsh-Haney at Florida Gulf Coast University. Ms.

Lakoskey claimed that Dr. Arruza acted "outrageously or reck-lessly," and with "no lawful purpose," when she retained Tina's re-mains and transferred them to Florida Gulf Coast University.

For Dr. Walsh-Haney, the allegations provided that she had custody of Tina's remains for about eleven years, and during all that time, there was "no ongoing investigation or prosecution for [Tina's] murder" and "no lawful reason for [Dr. Walsh-Haney] to retain [Tina's] remains." Storing Tina's remains "served no law en-forcement purpose," the complaint stated, and Dr. Walsh-Haney did not give notice or get permission from Ms. Lakoskey. Dr. Walsh-Haney "outrageously or recklessly retained" Tina's re-mains, Ms. Lakoskey asserted.

And for Dr. Rao, the complaint stated that she received Tina's remains in July 2016 and "retained" them for a year without providing notice or getting permission from Ms. Lakoskey. Retain-ing Tina's remains, the allegations continued, "served no lawful purpose and was explicitly proscribed by Florida law." And Dr. Rao "outrageously or recklessly retained" Tina's remains and al-lowed Florida Gulf Coast University to have them before she re-ceived them.

While Ms. Lakoskey alleged that Drs. Floro, Arruza, Walsh-Haney, and Rao acted "outrageously or recklessly" and with "no lawful purpose" when they "retain[ed] possession of [Tina's] re-mains without providing notice to [Ms. Lakoskey], or obtaining [her] permission," Ms. Lakoskey "d[id] not allege that any of the [individual defendants] were acting pursuant to an established state

procedure *designed* to deprive individuals of their [property rights]." *See id.* at 1318. Her complaint said the opposite: that Drs. Floro, Arruza, Walsh-Haney, and Rao were acting contrary to established state procedures when they retained and transferred Tina's remains. Ms. Lakoskey accused Dr. Floro of violating the state's Medical Examiner's Act by releasing Tina's remains to the University of Florida. And she alleged that, in 1998, the Act was amended to require medical examiners to get the approval of a decedent's next of kin before retaining the decedent's remains or giving them to a university for a purpose other than determining the decedent's identity or cause of death. Drs. Floro, Arruza, Walsh-Haney, and Rao were not acting pursuant to an established state procedure when they kept and transferred Tina's remains; Ms. Lakoskey alleged that they were acting outrageously and recklessly and contrary to the established state procedure.

"[A]n unauthorized intentional"—or even "negligent"—"deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the 14th Amendment if a meaningful post[]deprivation remedy for the loss is available." *Tinney*, 77 F.3d at 381–82 (emphasis omitted) (quoting *Hudson*, 468 U.S. at 533 and citing *Parratt*, 451 U.S. at 537–38). Because Ms. Lakoskey alleged that Drs. Floro, Arruza, Walsh-Haney, and Rao negligently or intentionally deprived her of her daughter's remains by violating the Act, predeprivation hearings would have been impracticable. Here, "[a]ll that due process requires . . . is a post[]deprivation 'means of redress for property

deprivations satisfying the requirements of procedural due process.'" *McKinney*, 20 F.3d at 1563 (alteration adopted) (quoting *Parratt*, 451 U.S. at 537). Ms. Lakoskey has that in the state tort claims she set out in her complaint. *See, e.g.*, *Williams,* 575 So. 2d at 694.

For the first time in her reply brief, Ms. Lakoskey contends that her state tort claims are not an adequate postdeprivation remedy for violating her property rights to her daughter's remains. She argues that the state tort remedies are not adequate because the defendants have sovereign immunity under state law, *see* Fla. Stat. § 768.28(9)(a), and because Florida's "impact rule" for intentional infliction of emotional distress claims bars damages absent physical injuries, *see R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995), or malice, *see Kirksey*, 45 So. 2d at 189.

We normally don't consider arguments raised for the first time in the appellant's reply brief. *Johnson v. Miami-Dade County*, 948 F.3d 1318, 1327 (11th Cir. 2020) (per curiam) ("This Court repeatedly has refused to consider issues raised for the first time in an appellant's reply brief." (alterations adopted; quotation omitted)). But, even if we consider Ms. Lakoskey's new reply brief arguments, we disagree that the postdeprivation remedies are inadequate.

Our precedent clearly forecloses the first argument because, under *Rittenhouse v. DeKalb County*, 764 F.2d 1451 (11th Cir. 1985), sovereign immunity does not make a postdeprivation remedy inadequate even if it defeats the plaintiff's claim. *See id.* at 1459 (agreeing with the Fourth Circuit that the opportunity to

adjudicate an affirmative defense like sovereign immunity is an adequate remedy whether or not the claim can overcome the defense); *Powell v. Ga. Dep't of Hum. Res.*, 114 F.3d 1074, 1082 n.11 (11th Cir. 1997) ("[The plaintiff] argues that th[e] postdeprivation process is inadequate because the [s]tate has invoked sovereign immunity as to any possible claims . . . . However, assuming . . . that the [s]tate is immune, [the plaintiff's] argument is foreclosed by our decision in *Rittenhouse* . . . .").

As for the impact rule, although generally in Florida, "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact," *R.J.*, 652 So. 2d at 362 (quoting *Reynolds v. State Farm Mut. Auto. Ins. Co.*, 611 So. 2d 1294, 1296 (Fla. Dist. Ct. App. 1992)), "[t]he impact rule does not bar claims grounded on [a] tortfeasor's malice, great indifference, willful or wanton conduct, or outrageous conduct," *Williams v. Boyd-Panciera Fam. Funeral Care, Inc.*, 293 So. 3d 499, 501 (Fla. Dist. Ct. App. 2020) (citing *Gonzalez v. Metro. Dade Cnty. Pub. Health Tr.*, 651 So. 2d 673, 675 (Fla. 1995), among other cases). And Florida courts have rejected the application of the rule to cases concerning negligent mishandling of, or tortious interference with, dead bodies where the defendant's conduct demonstrates malice or its equivalent. *See Kirksey*, 45 So. 2d at 189 (explaining that the rule does not apply to tort actions where the alleged misconduct itself "reasonably impl[ies] malice" or suggests an "entire want of care of attention to duty, or great indifference to the persons,

property, or rights of others," implying malice; and observing that "[t]he right to recover, in such cases, is especially appropriate to tortious interference with *rights involving dead human bodies*, where mental anguish to the surviving relatives is not only the natural and probable consequence of the character of wrong committed, but indeed is frequently the only injurious consequence to follow from it" (emphasis added)); *Boyd-Panciera*, 293 So. 3d at 501–02 ("[T]he 'absence of physical impact does not bar a claim for the negligent mishandling of a dead body under Florida law' where the defendant's conduct is malicious or willful and wanton." (quoting *Gonzalez*, 651 So. 2d at 675)).

Here, Ms. Lakoskey alleged that the defendants' "outrageous[] or reckless[]" conduct caused her severe emotional distress, and Florida courts have recognized, absent physical impact, the very "cause of action for outrageous infliction of emotional distress by reckless conduct in connection with . . . a dead body" that she brought in this case. *Williams*, 575 So. 2d at 694. Though this tort may be difficult to prove factually, the burden of the postdeprivation remedy does not affect the adequacy of the remedy unless it makes the remedy completely unavailable. *See McKinney*, 20 F.3d at 1563–64 (finding adequate the Florida remedy of certiorari review); *Lake Lucerne Civic Ass'n v. Dolphin Stadium Corp.*, 878 F.2d 1360, 1369 (11th Cir. 1989) (explaining the "restricted scope" of this remedy); *see also Rittenhouse*, 764 F.2d at 1459.

In essence, Ms. Lakoskey argues that the impact rule and sovereign immunity will make her recovery more challenging in

state court.  But a plaintiff's ability or inability "to recover under [state law] remedies the full amount which [s]he might receive in a [section] 1983 action is not . . . determinative of the adequacy of the state remedies." *Hudson*, 468 U.S. at 535.  While recovery might be challenging, it is not impossible; a plaintiff can still achieve adequate relief. *See Lindsey*, 936 F.2d at 561 ("*Hudson* made clear that as long as *some* adequate postdeprivation remedy is available, no due process violation has occurred.").  "Because [Ms. Lakoskey] has had access to an adequate postdeprivation remedy, no procedural due process violation has occurred . . . ." *Id.*; *accord Arnaud v. Odom*, 870 F.2d 304, 306, 309 (5th Cir. 1989) (finding no procedural due process violation when "adequate state postdeprivation process [wa]s available to remedy the injuries asserted" against a coroner who, unbeknownst to the plaintiffs, "performed . . . grisly controlled experiments on" their baby girl's dead body).  As the Supreme Court explained in *Parratt*, our decision today avoids turning "the Fourteenth Amendment [into] a font of tort law to be superimposed upon whatever systems may already be administered by the [s]tates." 451 U.S. at 544 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)).

## CONCLUSION

We agree with the district court that Ms. Lakoskey failed to state a claim for relief under section 1983.  She could not establish that she received constitutionally inadequate process because she had an adequate postdeprivation state law remedy.  Although we sympathize deeply with her loss and regret the ordeals she

19-12401                Opinion of the Court                    19

experienced surrounding her daughter's remains, we affirm the district court's dismissal of her federal claims.

**AFFIRMED.**