[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 24, 2011
JOHN LEY
CLERK

_____

No. 08-13417

_____

D. C. Docket No. 07-00084-CV-CDL-3

NATIONAL ASSOCIATION OF BOARDS OF PHARMACY,

Plaintiff-Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF
GEORGIA,
FLYNN WARREN, JR.,
HENRY H. COBB, III,
Individually,
ELRIDGE W. MCMILLAN,
in his official capacity as a
member of The Board of Regents of
the University System of Georgia,
DONALD M. LEEBERN, JR.,
in his official capacity as a
member of The Board of Regents of
the University System of Georgia, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 24, 2011)

Before DUBINA, Chief Judge, TJOFLAT, Circuit Judge, and WALTER,[*] District Judge.

TJOFLAT, Circuit Judge:

This is an action for copyright infringement. The National Association of Boards of Pharmacy ("NABP") seeks damages and injunctive relief under the Copyright Remedies Clarification Act, 17 U.S.C. § 511(a) (the "CRCA"), against the Board of Regents of the University System of Georgia (the "Board of Regents"), its members (the "Members"), and several University of Georgia officials (the "University Officials") for appropriating NABP's written materials protected by the Copyright Act.[1] The district court dismissed NABP's claims for damages as barred by the Eleventh Amendment. The court denied NABP injunctive relief on the ground that the copyright infringements complained of had ceased. NABP now appeals.

_____

[*] Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

[1] The Copyright Act, as amended, 17 U.S.C. § 101 et seq. (hereafter the "Copyright Act").

Part I lays out the facts and procedural history of the case.  Part II discusses the jurisdictional issue surrounding NABP's premature notice of appeal.  Part III addresses the Eleventh Amendment issues, with subpart III.A discussing NABP's claim for injunctive relief against the Members and University Officials under Ex parte Young[2] and subpart III.B discussing whether the CRCA validly abrogates the States' sovereign immunity under either the Patent and Copyright Clause of Article I of the Constitution or § 5 of the Fourteenth Amendment so as to render the Board of Regents subject to a damages award.  Part IV concludes.

I.

NABP is a nonprofit corporation whose membership consists of state and foreign pharmacy boards charged by law with licensing and regulating pharmacists.[3]  NABP develops and administers two examinations the pharmacy boards use to evaluate applicants for pharmacist licenses—the North American Pharmacist Licensure Examination ("NAPLEX"), which consists of copyrighted,

---

[2]  209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

[3]  Because the district court decided this case on a motion to dismiss, we accept the allegations pled in the amended complaint, the operative document, as true.  Instituto de Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1342 (11th Cir. 2008).  NABP attempts to rely on facts alleged in a proposed second amended complaint that it attached to a motion for leave to amend its amended complaint, which it filed on April 28, 2007, after the district court had dismissed all claims against the Board of Regents, the Members, and the University Officials.  The district court did not consider this second amended complaint when entering judgment.  The court's failure to consider it is not challenged here.  Accordingly, we do not consider it, either.

3

multiple-choice test questions, and the Multistate Pharmacy Jurisprudence Examination ("MPJE").  To sit for the NAPLEX, applicants must register with NABP and acknowledge that the exam is proprietary and subject to copyright protection.

In the summer of 1994, NABP received numerous tips that University of Georgia ("University" or "UGA") Professor Flynn Warren was gathering actual NAPLEX questions for use in a NAPLEX review course he was teaching. Believing this to be a breach of its copyrights, NABP looked into the matter and discovered that Warren was indeed using NAPLEX questions in his review course. NABP complained to UGA, and, in 1995, the Board of Regents and Warren entered into a settlement agreement with NABP, in which the Board of Regents (on behalf of UGA) and Warren agreed to cease and desist all copying, transcribing or other use of NABP copyrighted materials and examination questions.  The agreement also allowed NABP to monitor compliance with the agreement.  For two years, UGA was required to provide NABP with copies of all new course materials; thereafter, UGA would provide NABP with the course materials upon request.

In 2007, NABP learned that Warren was again gathering and disseminating NAPLEX questions for the review course he taught at UGA and Samford University, where he was a visiting professor.  Warren obtained NAPLEX questions

4

by having recent examinees send him questions they remembered seeing on the exam. Through this scheme, he compiled hundreds of NAPLEX questions for his review materials.

NABP's attorney, Kerri Hochgesang, purchased materials for a "Pharmacy Board Review" course taught by Warren and Professor Henry H. Cobb III of the Continuing Education Office of the College of Pharmacy at UGA. The materials cost $100.00 and were purchased from the College of Pharmacy itself. NABP reviewed the materials and determined that at least 150[4] of the questions they contained were verbatim, nearly verbatim, or substantially similar to NAPLEX questions. Each compromised NAPLEX question is no longer valid for measuring the competency of pharmacy graduates who sit for the NAPLEX. The questions were discarded and the expense NABP incurred in replacing the questions was incalculable.

On August 3, 2007, NABP brought this action for damages and injunctive relief against the Board of Regents and Warren, in his individual capacity, for appropriating NABP's NAPLEX questions. The complaint contained three counts, asserted against both the Board of Regents and Warren. Count I, for copyright

---

[4] NABP's initial complaint claimed to find 150 offending questions. NABP's amended complaint increased that total to 633 questions.

infringement, was brought under the Copyright Act, 17 U.S.C. §§ 501 and 511.[5]

Count II, for misappropriation of trade secrets, was brought under the Georgia

Trade Secrets Act of 1990, O.C.G.A. § 10-1-760 et seq.[6] Count III, for breach of

contract, was based on the 1995 settlement agreement.[7] NABP immediately moved

the district court to issue a temporary restraining order ("TRO") and a preliminary

injunction.

The court issued a TRO the same day, August 3. The order directed the U.S.

Marshal, assisted by NABP's attorneys, to search the UGA College of Pharmacy

and to seize and impound:

> (a) all documents, handouts, disks, CD-ROMs, e-mails, web-postings, slide shows, books, advertisements, programs, or similar material containing NABP's copyrighted examination questions, and/or the identity, address, telephone number, and e-mail address of individuals attending Flynn Warren's review course and/or receiving such examination questions from him, and computers in the custody or control of Defendant Flynn Warren, Jr. while employed at the [UGA] within the custody and control of the [UGA].

> (b) . . . all books, records, correspondence and other documents in Defendant Warren's possession, custody or control which relate to said

---

[5] The relevant parts of §§ 501 and 511 are set out in the text at subpart III.B, infra. These provisions state that the States, their instrumentalities, officers, and employees are liable for infringement and are not protected from suit by the Eleventh Amendment or any other doctrine of sovereign immunity.

[6] Section 10-1-760 adopts the Uniform Trade Secrets Act.

[7] The complaint alleged that the district court had subject matter jurisdiction to entertain Count I under 28 U.S.C. §§ 1331 and 1338 and Counts II and III under 28 U.S.C. § 1367.

copyrighted examination questions or identity of such individuals.

In addition, the order temporarily restrained the

> defendants, their officers, directors, principals, agents . . . and all those acting in concert or participation with them . . . from[, among other things]
>
> (a) Infringing . . . NABP's . . . copyrights and specifically from copying, duplicating, distributing, selling, publishing, reproducing, publically performing, displaying, preparing derivative works based on, renting, leasing, offering, using in their advertising or otherwise transferring or communicating . . . printed, audio, photographic, electronic or other form, including any communication in any class . . . any questions from any test copyrighted by NABP . . . without . . . permission . . . from NABP;
>
> (b) Debriefing or otherwise intentionally or knowingly obtaining from any past examinee or other person questions from any test that NABP has not voluntarily disclosed to the general public including but not limited to any for[m] of the NAPLEX, and whether or not such questions are identical or substantially similar to the actual NAPLEX questions; [and]
>
> (c) misappropriating NABP's trade secrets[.]

The district court scheduled a hearing on NABP's application for a preliminary injunction for August 14. On August 9, the parties jointly moved the court to postpone the hearing until August 21 and to extend the TRO through that date. The court granted the motion.

On August 20, the Board of Regents moved the district court to dismiss the case for lack of subject matter jurisdiction—on the ground that the Eleventh

7

Amendment prohibited the court from entertaining the case.[8] At the hearing on August 21, the Board of Regents's counsel represented to the court that the materials described in the TRO had been seized and that his client would voluntarily comply with the TRO's injunctive provisions. Counsel also informed the court that the review course scheduled to begin in August had been cancelled and that Professor Warren was no longer teaching the review course. The court accepted counsel's representations, did not extend the TRO, and deferred consideration of NABP's application for a preliminary injunction until it resolved the Eleventh Amendment jurisdictional issue.

On October 25, 2007, while the Board of Regents's motion to dismiss was still pending, NABP, having obtained leave to do so, filed an amended complaint, which added as defendants the Members and the University Officials in their official capacities.[9] The amended complaint also added as a defendant Henry H.

---

[8] On August 21, prior to the hearing that day, Warren moved the district court to dismiss the complaint for lack of subject matter jurisdiction, asserting Eleventh Amendment immunity from suit. The court denied his motion because he was sued only in his individual capacity.

[9] The Members were Eldridge W. McMillan, Donald M. Leebern, Jr., Hugh A. Carter, Jr., J. Timothy Shelnut, Michael J. Coles, William H. Cleveland, Wanda Yancey Rodwell, James R. Jolly, Patrick S. Pittard, Julie Ewing Hunt, W. Mansfield Jennings, Jr., Allan Vigil, Doreen Stiles Poitevint, Richard L. Tucker, Willis J. Potts, Robert F. Hatcher, A. Felton Jenkins, Benjamin J. Tarbutton, James A. Bishop, and Kenneth R. Bernard, Jr. The University Officials were Svein Oie, Dean of the College of Pharmacy, Paul Brooks, Assistant Dean for Non-Traditional Education & Outreach and Director of the College of Pharmacy, Alan Wolfgang, Assistant Dean of Student Affairs of the College of Pharmacy, and George Francisco, Associate Dean of the College of Pharmacy.

Cobb III, who, like Warren, was sued in his individual capacity. The amended complaint sought damages and injunctive relief. Counts II and III asserted the same claims as did the initial complaint.[10] Count I, however, added two new claims at issue in this appeal. The amended Count I again sought damages against all defendants for copyright infringement under the Copyright Act.[11] The first new claim sought an injunction against the Members and the University Officials under Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), barring them from further copyright infringement.

Count I also sought damages against all defendants under the Copyright Act, but under a new and separate theory to overcome the defendants' assertion of sovereign immunity. NABP alleged that the defendants' copyright infringement simultaneously deprived NABP of its constitutionally protected property interest in the NAPLEX questions "'without due process of law' because the State of Georgia did not provide adequate remedies for Defendants' infringement, which was perpetrated in a manner that was not random and was not unauthorized." Am. Compl. ¶ 38.

---

[10] Count II again alleged misappropriation of trade secrets, but added Cobb as a defendant alongside the Board of Regents and Warren. Count III again alleged breach of contract against the Board of Regents and Warren.

[11] Count I itself does not reference sovereign immunity concerns. The amended complaint, however, cites as jurisdictional bases 17 U.S.C. §§ 501, 511, which explicitly abrogate the State's sovereign immunity for suits grounded in copyright infringement.

9

Although NABP could have styled this constitutional claim under 42 U.S.C. § 1983, NABP's due process claim under the Copyright Act was intended to comply with United States v. Georgia, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006).[12]  Under Georgia, Congressional abrogation of the States' sovereign immunity is valid when the statutorily proscribed conduct simultaneously violates a constitutional guarantee protected by the Fourteenth Amendment.  Id. at 158–59, 126 S. Ct. at 881–82.  If meritorious, this claim would overcome the defendants' assertion of sovereign immunity.

The Board of Regents, the Members, and the University Officials jointly moved the district court to dismiss Count I of the amended complaint under Federal Rules of Civil Procedure 8(b), 12(b)(1) and (6).  They sought the dismissal of the claims for damages pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the Eleventh Amendment barred the court from entertaining those claims.  The Members and the University Officials also contended that Count I's claim for injunctive relief under Ex parte Young should be dismissed on two alternative grounds: (1) Count I did not sufficiently allege a continuing violation of federal law—i.e., that the University Officials would continue to infringe NABP's

---

[12]  The amended complaint does not specifically reference United States v. Georgia, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006), but subsequent arguments before the district court demonstrate that NABP styled its due process claim to fit within Georgia.

10

copyrights—and should therefore be dismissed pursuant to Rule 8(b) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); (2) since the University Officials were no longer engaging in the illegal activity complained of, the claim for injunctive relief was moot and should be dismissed under Rule 12(b)(1).

On April 18, 2008, the district court ruled on the joint motion to dismiss Count I of the amended complaint. <u>Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents</u>, No. 3:07-CV-084 (CDL), 2008 WL 1805439 (M.D. Ga. April 18, 2008). Addressing the claim for damages under the Copyright Act, the court held that the Copyright Clause of Article I of the Constitution did not give Congress power to abrogate the States' Eleventh Amendment immunity and thus to authorize NABP's suit for damages under CRCA. The court also held that the Due Process Clause of the Fourteenth Amendment did not provide Congress with a source for abrogating such immunity for two reasons. First, the amended complaint failed to allege that CRCA was "congruent and proportional" so as to qualify as valid prophylactic legislation under <u>City of Boerne v. Flores</u>, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997). Second, the amended complaint failed to state an actual violation of procedural due process against the Members and the University Officials given the infeasibility of pre-deprivation procedures and the adequacy of

11

Georgia's post-deprivation procedures.[13]  The court therefore dismissed the Count I claims for damages pursuant to Rule 12(b)(1) for lack of jurisdiction.[14]

Turning to the Count I claim for injunctive relief, the court held, citing Twombly, that NABP did not sufficiently allege an "ongoing violation" of its copyrights.  Therefore, according to the court, the amended complaint "failed to state a claim for relief against the [Members and the University Officials] under Ex parte Young."  In dismissing NABP's claim, however, the court also considered material outside of the amended complaint—representations by counsel for the Board of Regents at the August 21 hearing that the infringement had ceased:

> Here, [NABP] simply alleges that "Defendants are continuing to infringe" its copyrights and that Defendants' wrongful conduct is "continuing."  However, [NABP] does not allege any facts to support these conclusory allegations.  Indeed, [NABP] could not. . . .  UGA had stopped offering the [pharmacy review] course and Warren had retired from teaching.  By October 2007 [when NABP filed its amended complaint], there was no reasonable expectation that [NABP]

---

[13]  The court held that NABP was not entitled to a pre-deprivation hearing because the acts of infringement had been random and unauthorized, rather than "not random, and . . . not unauthorized," as the amended complaint alleged, and that the Georgia Tort Claims Act, O.C.G.A. §§ 50-21-20–50-21-36, and the Georgia Trade Secrets Act of 1990 and the 1995 settlement agreement, on which Counts II and III were based, provided NABP all the process it was due.

[14]  The court dismissed the claims against the Board of Regents, the Members, and the University Officials, who were sued in their official capacities, under Rule 12(b)(1) on the Eleventh Amendment immunity ground.  The court dismissed NABP's procedural due process claim on the alternative ground that it failed to state a claim for relief.  See Parratt v. Taylor, 451 U.S. 527, 540–41, 101 S. Ct. 1908, 1915–16, 68 L. Ed. 2d 420 (1981) (finding no categorical constitutional due process violation where the plaintiff was denied a pre-deprivation hearing); see also Fed. R. Civ. P. 12(b)(6).

12

would be subject to the same injury again or that [NABP] would be unable to seek [judicial] review in the unlikely event that the injury reoccurred.

The court also dismissed the damages claims brought against the Board of Regents in Counts II and III pursuant to Rule 12(b)(1) as barred by the Eleventh Amendment.[15] The court dismissed the Count II misappropriation-of-trade-secrets claims brought against Warren and Cobb because Georgia law provided the exclusive remedy for torts committed by state employees acting within the scope of their employment.[16] The court dismissed the Count III breach of contract claim against Warren without prejudice, in the exercise of the discretion provided by 28 U.S.C. § 1367(c).

On April 28, 2008, NABP moved the court to reconsider its disposition of the Count I procedural due process claim for damages and for injunctive relief under Ex parte Young. On the same day, NABP also moved the court for leave to file a

---

[15] The Ex parte Young doctrine had no application in Counts II and III because the Members and the University Officials were not named as defendants in those counts. Moreover, Counts II and III were state law claims as to which Ex parte Young did not apply. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 104–06, 104 S. Ct. 900, 910–11, 79 L. Ed. 2d 67 (1984).

[16] Georgia law waives sovereign immunity for tort suits against state officers and employees committed in the scope of their employment under O.C.G.A. § 50-21-23, while a later statute, O.C.G.A. § 50-21-25, states that the procedure established under the Georgia Tort Claims Act provides "the exclusive remedy for any tort committed by a state officer or employee," O.C.G.A. § 50-21-25(a).

13

second amended complaint.[17]  The court denied the motion to reconsider but reserved ruling on the motion for leave to amend pending the outcome of this appeal.  At this point, the only claims still pending in the district court were NABP's Count I copyright infringement claims against Warren and Cobb.

On May 12, 2008, NABP brought suit against the Board of Regents and Warren in the Superior Court of Fulton County, Georgia.  Complaint, Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents, Civil Action No. 2008CV150371 (Ga. Super. Ct. of Fulton Cnty. May 12, 2008).  Pleading the same copyright infringement scheme it had asserted in Count I of its amended complaint, NABP sought damages and injunctive relief against those two parties for breaching the 1995 settlement agreement.

On June 12, 2008, NABP filed a notice of appeal of the district court's April 18 order dismissing its claims against the Board of Regents, the Members and the University Officials.[18]  On July 14, 2008, NABP moved the district court to enter a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) in conformance with its April 18 order dismissing the Count I claims against those

_____

[17]  The proposed second amended complaint contains new allegations on which NABP seeks to rely in this appeal.  As we stated earlier, see supra note 3, these allegations were not before the district court when it dismissed Count I of the amended complaint and thus are not properly before us now.

[18]  NABP also appealed the district court's denial of its motion to reconsider its April 18 order.

14

defendants. The court granted the motion and entered a partial final judgment the same day. NABP did not file a second notice of appeal following the entry of the Rule 54(b) judgment; instead, it relied on the notice of appeal filed on June 12.

The June 12 appeal was dismissed by a three-judge panel of this court on September 23, 2008 on the ground that the district court's order was an unappealable interlocutory order and that the subsequent Rule 54(b) certification did not cure this defect. NABP filed a petition for a rehearing en banc on October 8, 2008, which the panel construed as a petition for rehearing. The jurisdictional issue—the appealability of the interlocutory order—was carried with the case, to be resolved in this appeal.

## II.

The district court's April 18 order dismissing Count I was not a final appealable order under 28 U.S.C. § 1291 because it did not resolve all pending claims against all parties. NABP's attempt to appeal it via its June 12 notice of appeal was thus inoperative; the notice was premature. We must now decide whether the June 12 notice of appeal can serve as a notice of appeal of the subsequent Rule 54(b) judgment.

Under our case law, a subsequent Rule 54(b) certification cures a premature notice of appeal from a non-final order dismissing claims or parties. Wilson v.

Navistar Int'l Transp. Corp., 193 F.3d 1212, 1213 (11th Cir. 1999) ("[W]hen a notice of appeal is filed between the time of a decision or order and the time that the order is rendered appealable by the entry of judgment the otherwise premature notice of appeal is treated as if filed on the date of and after entry of judgment."), overruled on other grounds by Saxton v. ACF Inds., Inc., 254 F.3d 959, 963 (11th Cir. 2001) (en banc); Robinson v. Tanner, 798 F.2d 1378, 1385 (11th Cir. 1986) (accepting as law the holding in Jetco Electronic Industries v. Gardiner, 476 F.2d 1228 (5th Cir. 1973), that "[a] premature notice of appeal is valid if filed from an order dismissing a claim or party and followed by a subsequent final judgment without a new notice of appeal being filed").[19]

The courts of appeals of other circuits have also answered this question in the affirmative: "'a premature notice of appeal is effective if Rule 54(b) certification is subsequently granted.'" Swope v. Columbian Chems. Co., 281 F.3d 185, 191 (5th Cir. 2002) (quoting St. Paul Mercury Ins. Co. v. Fair Grounds Corp., 123 F.3d 336, 338 (5th Cir. 1997)); see also Outlaw v. Airtech Air Conditioning & Heating, Inc.,

_____

[19] The Board of Regents, the Members, and the University Officials cite subsequent cases from this circuit suggesting the opposite result. See e.g., Useden v. Acker, 947 F.2d 1563, 1570 (11th Cir. 1991) (stating that the court had dismissed the "appellant's first appeal as premature" because its notice of appeal was filed prior to the district court's Rule 54(b) certification for appeal). Whatever the validity of these subsequent cases, this court follows the rule that where two panel decisions conflict, the earlier decision constitutes the controlling precedent. Robinson v. Tanner, 798 F.2d 1378, 1383 (11th Cir. 1986) (citing Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)).

16

412 F.3d 156, 158 (D.C. Cir. 2005); In re Bryson, 406 F.3d 284, 287–89 (4th Cir. 2005); Ruiz v. McDonnell, 299 F.3d 1173, 1179–80 (10th Cir. 2002); Good v. Ohio Edison Co., 104 F.3d 93, 94–96 (6th Cir. 1997); cf. FirsTier Mortg. Co. v. Investors Mortg. Ins. Co., 498 U.S. 269, 270, 111 S. Ct. 648, 649–50, 112 L. Ed. 2d 743 (1991) (applying this principle to Federal Rule of Appellate Procedure 4(a)(2)).[20]

Even if our precedent were unclear, we are persuaded by these decisions. We therefore hold that NABP's June 12 premature notice of appeal serves as a notice of appeal of the July 14 Rule 54(b) judgment.

## III.

The Eleventh Amendment provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As the Supreme Court observed in Alden v. Maine,

> We have . . . sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the

---

[20] Fed. R. App. P. 4(a)(2), Filing Before Entry of Judgment, states that "[a] notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." In holding that a Rule 54(b) judgment can be appealed pursuant to a notice of appeal filed subsequent to the dispositive order the Rule 54(b) judgment incorporates, the courts of appeals' decisions we have cited applied Rule 4(a)(2) either expressly or by necessary implication.

17

Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments.

527 U.S. 706, 713, 119 S. Ct. 2240, 2246–47, 144 L. Ed. 2d 636 (1999).[21]

Consequently, "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trs. v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 962, 148 L. Ed. 2d 866 (2001).

NABP argues that sovereign immunity does not bar its claims for injunctive relief or damages. First, NABP contends that the district court erred in denying injunctive relief under Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), because it sufficiently alleged an ongoing infringement of its copyrights. Second, it asserts that Congress abrogated state sovereign immunity by enacting the CRCA under either its Article I authority or under the Fourteenth Amendment. We address each argument in turn.

A.

In Ex parte Young, the Supreme Court carved out a narrow exception to the

---

[21] It is not disputed that the Board of Regents, the Members and the University Officials are arms or instrumentalities of the State of Georgia entitled to Eleventh Amendment immunity. See, e.g., Lapides v. Bd. of Regents, 535 U.S. 613, 616, 122 S. Ct. 1640, 1642, 152 L. Ed. 2d 806 (2002).

18

States' sovereign immunity when it "held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 426, 88 L. Ed. 2d 371 (1985), reh'g denied 474 U.S. 1111, 106 S. Ct. 900, 88 L. Ed. 2d 933 (1986). Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007), the district court found that NABP did not allege sufficient facts to suggest a plausible continuing violation of federal law under Ex parte Young. Although the court conceded that NABP's initial complaint—filed in August 2007—sufficiently alleged an ongoing violation, it stated that by the time NABP filed its amended complaint, in October 2007,

> [NABP] could not allege facts to support its continuing infringement theory because the [University Officials] were not committing (or permitting) any ongoing violation: UGA had stopped offering the [pharmacy review] course and Warren had retired from teaching. By October 2007, there was no reasonable expectation that [NABP] would be subject to the same injury again or that [NABP] would be unable to seek review in the unlikely event that the injury recurred. Accordingly, the Court finds that [NABP] has failed to state a claim against [the Members and the University Officials] under Ex parte Young.

In effect, the district court found that, although the amended complaint on its face stated a plausible claim, facts outside the complaint proved that NABP could never show an ongoing violation of copyright law. The district court therefore incorrectly characterized its ruling. It did not, as the court asserted, dismiss

19

NABP's claim for a "fail[ure] to state a claim"—borrowing from the language of Rule 12(b)(6)—or a failure to plead sufficiently, as required by Rule 8(b) and Twombly. Rather, the actual basis of the court's ruling was that the claim for injunctive relief had become moot.[22]

"A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief." Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998). The district court found that the Board of Regents's representations made at the August 21 hearing—that those involved in the presentation of the NAPLEX review course had voluntarily ceased infringing NABP's copyrights and that Warren had retired—rendered NABP's otherwise sufficient claim nugatory, or moot.

Therefore, we review the claim for mootness, a justiciablity ground for dismissal properly brought under Rule 12(b)(1).[23] See, e.g., Sheely v. MRI

---

[22] The joint motion to dismiss indicated that it was brought under Rules 12(b)(1)–(6). Mootness was one of the arguments counsel made to the district court in their memorandum in support of the motion.

[23] It is of little moment that the district court did not label its dismissal this way, because "'[i]t is a familiar principle that the label a district court puts on its disposition of a case is not binding on a court of appeals.'" Sheely v. MRI Radiology Network, 505 F.3d 1173, 1182 (11th Cir. 2007) (quoting Tuley v. Heyd, 482 F.2d 590, 593 (5th Cir. 1973)). This court, on multiple occasions, has "held that a district court's finding of mootness, although embodied in an order granting summary judgment under Rule 56, must be treated 'as if it were a ruling on a Rule 12(b)(1) motion.'" Id. (quoting Troiano v. Supervisor of Elections, 382 F.3d 1276, 1278 n.2 (11th Cir. 2004)). Because defense counsel raised the issue of mootness to the district court and

20

Radiology Network, 505 F.3d 1173, 1182 (11th Cir. 2007); Troiano v. Supervisor

of Elections, 382 F.3d 1276, 1278 n.2 (11th Cir. 2004). "Whether a [claim] is moot

is a question of law that we review de novo," and "we review a trial court's findings

of fact for clear error." Troiano, 382 F.3d at 1282.

We have previously explained the limitations mootness places on a federal

court's subject matter jurisdiction:[24]

> Article III of the Constitution limits the jurisdiction of the federal
> courts to the consideration of "Cases" and "Controversies." . . . [A]
> case is moot when it no longer presents a live controversy with respect
> to which the court can give meaningful relief. If events that occur
> subsequent to the filing of a lawsuit . . . deprive the court of the ability
> to give the plaintiff . . . meaningful relief, then the case is moot and
> must be dismissed.

Sheely, 505 F.3d at 1183 (quoting Troiano, 382 F.3d at 1281–82).

But, "[t]he doctrine of voluntary cessation provides an important exception to

---

the court's order embodied a mootness finding, we review its order as if it was based on Rule 12(b)(1).

[24] NABP argues that the district court could not consider whether the claim was moot because (1) the "relation back" rules of Rule 15 required the court to consider only the facts as they existed when the initial complaint was filed, and (2) in deciding whether a claim is moot, a court may only consider matters contained in the pleadings. As applied to mootness challenges, this argument is simply specious. "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22, 117 S. Ct. 1055, 1069 n.22, 137 L. Ed. 2d 170 (1997). This argument is more understandable, however, in light of the analytical confusion described above. Both the district court and the defendants attacked NABP's complaint as "failing to state a claim" or failing to sufficiently plead under Twombly. These two standards focus solely on the four corners of the complaint and do not take into account subsequent, real-world events.

21

the general rule." Troiano, 382 F.3d at 1282. "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S. Ct. 693, 708, 145 L. Ed. 2d 610 (2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289, 102 S. Ct. 1070, 1074, 71 L. Ed. 2d 152 (1982)). "Otherwise a party could moot a challenge to a practice simply by changing the practice during the course of the lawsuit, and then reinstate the practice as soon as the litigation was brought to a close." Jews for Jesus, 162 F.3d at 629. Accordingly, the voluntary cessation of challenged conduct will only moot a claim when there is no "reasonable expectation" that the accused litigant will resume the conduct after the lawsuit is dismissed. Id.; see also Laidlaw, 528 U.S. at 189, 120 S. Ct. at 708.[25]

Generally, the "party asserting mootness" bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to

---

[25] NABP does not explicitly make this argument in its brief to this court and, under normal circumstances, we would consider it waived. See United States v. Curtis, 380 F.3d 1308, 1310 (11th Cir. 2004) ("[A]n appellant abandons any claim . . . not raised in his initial brief."). We consider this argument, however, for two reasons. First, the district court's order dismissed NABP's claim for failing to state a claim and thus did not put NABP on notice that it could make a voluntary cessation argument. Second, NABP's brief to this court and brief in opposition to the motion to dismiss in the district court brought forward the basic facts necessary to address this voluntary cessation claim. See Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994) (addressing an evidentiary ruling not listed in its statement of the issues because the party "extensively discussed" the issue in its brief).

22

start up again." Laidlaw, 528 U.S. at 189, 120 S. Ct. at 708 (internal citations and alteration omitted). We also recognize, however, that "government actor[s enjoy] a rebuttable presumption that the objectionable behavior will not recur." Troiano, 382 F.3d at 1283 (emphasis in original); see also Harrell v. The Fla. Bar, 608 F.3d 1241, 1266 (11th Cir. 2010) ("[W]e have applied a 'rebuttable presumption' in favor of governmental actors . . . ."); Sheely, 505 F.3d at 1183 ("[G]overnment actors receive the benefit of a rebuttable presumption that the offending behavior will not recur."). Hence, "the Supreme Court has held almost uniformly that voluntary cessation [by a government defendant] moots the claim." Beta Upsilon Chi Upsilon Chapter v. Machen, 586 F.3d 908, 917 (11th Cir. 2009) (collecting cases). And "this Court ha[s] consistently held that a challenge to [government conduct] that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the [government conduct] will [resume] if the suit is terminated." Troiano, 382 F.3d at 1285.

Three factors are relevant in conducting this mootness inquiry. First, we consider whether the termination of the offending conduct was "unambiguous." Compare Harrell, 608 F.3d at 1266–67 ("[I]f a governmental entity decides in a clandestine or irregular manner to cease a challenged behavior, it can hardly be said that its 'termination' of the behavior was unambiguous."), with Troiano, 382 F.3d at

23

1285 (noting that government behavior provided "ample evidence" of changed conduct).

Second, we look to whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction. Compare Christian Coal. of Ala. v. Cole, 355 F.3d 1288, 1292–93 (11th Cir. 2004) (holding that a challenge to the application of state judicial canons was rendered moot where voluntary cessation was based on consideration of new Supreme Court precedent and "not made so as to merely avoid a ruling by the federal court"), with Harrell, 608 F.3d at 1267 (holding that voluntary cessation did not render a claim moot where the government "acted in secrecy, meeting behind closed doors and, notably, failing to disclose any basis for its decision," so that the "the circumstances here raise a substantial possibility that the defendant has changed course simply to deprive the court of jurisdiction" (internal quotation and citation omitted)).

Third, we ask whether the government has "consistently applied" a new policy or adhered to a new course of conduct. Jews for Jesus, 162 F.3d at 629 (considering the fact that the defendant had consistently applied a new policy for three years after voluntary cessation).

Here, the district court found that the alleged infringement had ceased

because UGA stopped offering the NAPLEX review course and Professor Warren had retired from teaching. From these two facts, the court found that there was no reasonable expectation that NABP would suffer the same injury in the future and dismissed its claim. The court did not indicate from what source it based its cessation finding, but the parties have pointed us to two instances where the defendants represented that the offending conduct had ceased.

The first representation occurred at the August 21 hearing. Counsel for the Board of Regents and for Warren stated that a review course planned to begin earlier that month had been canceled and that there were no plans to use the allegedly infringing questions in the future. The second representation was in response to NABP's interrogatory submitted after the Members and the University Officials had been joined as defendants and sued under Ex parte Young.[26] The Board of Regents's counsel, now representing these added defendants, stated that the review course was no longer being held; furthermore, the questions that allegedly infringed NABP's copyrights had been returned to NABP and Warren had retired. Again, we review the district court's findings of fact for clear error and its mootness determination de novo. Troiano, 382 F.3d at 1282.

Considering all of the facts before the district court, we disagree with its

---

[26] The district court permitted NABP to engage in limited discovery solely to contest the defendants' assertion of Eleventh Amendment immunity.

conclusion that the case became moot once the August review course had been canceled and Warren retired. Even applying the presumption favoring government actors, the facts surrounding the voluntary cessation here suggest a reasonable basis to believe that the infringement may resume if this suit were terminated. See Troiano, 382 F.3d at 1285.

The representations counsel made to the court at the August 21 hearing show that the infringement had not been unambiguously terminated. While counsel did say that the review course (to be held that month) had been cancelled and that Warren had retired, counsel also stated that even after retirement, Warren intended to teach the review course and wished to be free to do so. Counsel for the Board of Regents—later counsel also for the Members and the University Officials—stated:

> Your Honor, we come at kind of a change in Mr. Warren's life. He's been teaching at the university for over 34 years, and he just this summer retired. I believe he's teaching—continuing staying on kind of emeritus, teaching one substantive course in the College of Pharmacy, and then had been planning to teach the review course.

(emphasis added). And Warren's counsel stated:

> Your Honor, [Warren] certainly has not intentionally violated any copyright. And frankly, I think—we have just been retained and had limited contact with him, but we intend to remedy that today. But he is not intending to conduct any course or do anything that would in any way remotely be construed as further violation of any—if in fact it were determined that a violation has occurred—that any knowledge going forward will occur.
>      He would like to be free to teach his courses, obviously, but not

26

without use—but without the use of any of the material that has been objected to and found by the plaintiffs to be infringing.

(emphasis added).

Hence, the representations that the August review course had been cancelled and that Warren had retired could not be construed to show that the infringing conduct had been unambiguously terminated. Warren intended to continue teaching the review course at UGA even after his retirement—canceling the August review course did not bar a future course. What is more, the amended complaint alleges that the Board of Regents made similar promises before—in executing the 1995 settlement agreement—and failed to keep them, prompting the current law suit.[27]

Nor does the cessation appear to be the result of any "substantial deliberation" that would indicate a sincere change in position rather than an attempt to avoid the issuance of an injunction. Compare Christian Coal. of Ala., 355 F.3d at 1292–93 (finding voluntary cessation rendered a claim moot when the decision was based on an intervening change in the law), with City of Mesquite, 455 U.S. at 289, 102 S. Ct. at 1074–75 (holding that mootness was not the necessary result when nothing in the record suggested that a city's decision to repeal challenged language

---

[27] The fact that NABP claims that it can no longer use the compromised questions in its NAPLEX exam does not, as Appellees assert, change this analysis. The alleged scheme entailed not only distribution of the NAPLEX questions, but also continually increasing the supply of these questions via information provided by the student-examinees.

in an ordinance would preclude it from reenacting the same language if the district court's judgment were vacated).

Instead, the decision to cancel the August review course appears to have been made solely in response to the current litigation—in order to avoid an injunction. Counsel for the Board of Regents first announced the cancellation at the August 21 hearing for a preliminary injunction. Although Warren's counsel stated that Warren had retired, he also indicated that Warren wished to continue teaching the course and doubted that he had actually infringed NABP's copyrights. Finally, neither counsel provided any reasoned basis for voluntarily ceasing the infringing conduct. Together, these facts provide a reasonable basis to conclude that, if this case were closed, the infringement might continue.

Finally, the record is not clear with respect to whether the Board of Regents, the Members, and the University Officials have consistently adhered to their professed cessation of the infringement. NABP indicates that it is without knowledge, but argues that Warren's retirement does not preclude distribution by other UGA employees of the infringing questions. The Board of Regents, the Members, and the University Officials aver that it is undisputed that the infringing conduct has ceased.

These facts show that the Board of Regents's, the Members', and the

28

University Officials' conduct never unambiguously terminated and that the circumstances surrounding the purported cessation "raise a substantial possibility that the defendant[s] ha[ve] . . . changed course simply to deprive the court of jurisdiction." Harrell, 608 F.3d at 1267 (internal quotation and citation omitted). We therefore find that the voluntary cessation of the offending conduct has not rendered NABP's claim for injunctive relief moot.

B.

NABP next argues that the district court erred when it dismissed its claim for damages under the CRCA. Sovereign immunity is no bar to a claim for damages when Congress validly abrogates the States' sovereign immunity through legislation. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55, 116 S. Ct. 1114, 1123, 134 L. Ed. 2d 252 (1996). Congress may abrogate the States' sovereign immunity when it (1) "unequivocally expresse[s] its intent to abrogate the immunity" through a "clear legislative statement," and (2) acts "pursuant to a valid exercise of [constitutional] power." Id. (internal quotation and citation omitted). The district court held that, although Congress did clearly express through a legislative statement its intent to abrogate the States' sovereign immunity, it did not act pursuant to a valid grant of constitutional authority.[28] NABP argues that

---

[28] The district court also rejected NABP's argument that the Board of Regents, the Members, and the University Officials waived sovereign immunity; NABP does not challenge

Congress validly acted under either the Copyright and Patent Clause of Article I of the Constitution or under § 5 of the Fourteenth Amendment. Determinations of sovereign immunity are questions of law we review de novo. Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe, 177 F.3d 1212, 1224 (11th Cir. 1999).

It is undisputed that, through its legislative statement in the CRCA, Congress unequivocally expressed its intent to abrogate the States' sovereign immunity. The relevant provisions of the CRCA provide:

> Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by sections 106 through 122, for importing copies of phonorecords in violation of section 602, or for any other violation under this title.

17 U.S.C. § 511(a). And

> Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any

the ruling here.

30

instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

Id. § 501(a). Therefore, the determinative question before us is: "Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?" Seminole Tribe, 517 U.S. at 59, 116 S. Ct. at 1125.

1.

The legislative history of the CRCA makes clear that Congress intended to abrogate state sovereign immunity under its Article I powers. See H.R. Rep. No. 101-282(I), at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3949, 3955 ("Congress has authority under its Article I powers to abrogate State sovereign immunity. Congress' power under the Fourteenth Amendment has been repeatedly upheld, but in Pennsylvania v. Union Gas, the Court held that Congress has the power to abrogate under the Commerce Clause of Article I. The Committee believes that the Union Gas reasoning applies equally to the Copyright Clause of Article I.") (footnote omitted). The district court held that Congress does not have authority abrogate the States' sovereign immunity through the CRCA under its Article I power. We agree.

The Copyright and Patent Clause is found in Article I of the Constitution. It

31

provides, "Congress shall have the power . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."  U.S. Const. art. I, § 8, cl.8.  In Seminole Tribe, a case decided after the passage of the CRCA, the Supreme Court stated that Congress could not rely on its Article I authority to abrogate the States' sovereign immunity and overruled Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S. Ct. 2273, 105 L. Ed. 2d 1 (1989).  Seminole Tribe, 517 U.S. at 72–73, 116 S. Ct. at 1131–32.  It declared

> Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States.  The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

Id. (footnote omitted).  Accordingly, in Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank, 527 U.S. 627, 119 S. Ct. 2199, 144 L. Ed. 2d 575 (1999), the Court rejected the argument that the Copyright and Patent Clause—the very source upon which NABP purports to rely—provides Congress with authority to abrogate state sovereign immunity through the Patent Remedy Act.  Id. at 635–36, 119 S. Ct. at 2205 ("Seminole Tribe makes clear that Congress may not abrogate state sovereign immunity pursuant to its Article I powers; hence the Patent Remedy Act cannot be sustained under . . . the Patent Clause.").

32

In Central Virginia Community College v. Katz, 546 U.S. 356, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006), however, the Supreme Court held that Congress may abrogate state sovereign immunity under the Bankruptcy Clause of Article I. Id. at 359, 126 S. Ct. at 994. The Court explained that language from Seminole Tribe may be read to support the opposite conclusion, but held that this language was dicta which it was not bound to follow and that "careful study and reflection convince[d] th[e] Court that that assumption was erroneous." Id. at 363, 126 S. Ct. 996.

Moreover, the Court distinguished Congress' authority to act pursuant to the Bankruptcy Clause from the authority Congress possesses under other constitutional grants of power. It explained that "[b]ankruptcy jurisdiction, as understood today and at the time of the framing, is principally in rem jurisdiction," and "[a]s such, its exercise does not, in the usual case, interfere with state sovereignty even when States' interests are affected." Id. at 369–70, 126 S. Ct. at 1000. Therefore, the Court found that "history strongly supports the view that the Bankruptcy Clause of Article I, the source of Congress' authority to effect this intrusion upon state sovereignty, simply did not contravene the norms this Court has understood the Eleventh Amendment to exemplify." Id. at 375, 126 S. Ct. at 1003.

33

NABP urges this court to read Katz for the proposition that Congress may also abrogate the States' sovereign immunity under the Copyright and Patent Clause in Article I. We find that Katz cannot be extended that far. The holding in Katz is carefully circumscribed to the bankruptcy context; its analysis is based upon the history of bankruptcy jurisdiction. It cannot fairly be read to reach congressional authority under the Copyright and Patent Clause.

What is more, in Katz the Court did not expressly overrule either Seminole Tribe or Florida Prepaid, and they remain precedent by which we are still bound.[29] It would be incongruous to hold that Congress may abrogate the States' sovereign immunity under the Copyright and Patent Clause for actions brought under the CRCA when the Supreme Court held that the clause does not provide this authority for the Patent Remedy Act. See Fla. Prepaid, 527 U.S. at 636, 119 S. Ct. at 2205; see also Biomed. Patent Mgmt. Corp. v. Cal., Dep't of Health Servs., 505 F.3d 1328, 1343 (Fed. Cir. 2007) ("[W]e find that Katz cannot be read to overrule Florida Prepaid, either expressly or implicitly."), cert. denied ___ U.S. ___, 129 S. Ct. 895, 173 L. Ed. 2d 106 (2009).

---

[29] The dissent criticized the Katz majority for "cast[ing] aside" the "Court's settled state sovereign immunity jurisprudence," by distinguishing the Bankruptcy Clause from other Article I powers, Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 379, 126 S. Ct. 990, 1006, 163 L. Ed. 2d 945 (2006) (Thomas, J., dissenting), but we cannot conclude that, by carving out an exception in Katz, the Court intended to throw out its prior decisions.

We hold that Congress may not abrogate the States' sovereign immunity pursuant to the Copyright and Patent Clause; therefore, NABP cannot rely on that clause to support its claim for damages under the CRCA.

2.

Next, NABP argues that § 5 of the Fourteenth Amendment supports Congress' abrogation of the States' sovereign immunity in the CRCA. It is well established that § 5 grants Congress the authority to abrogate state sovereign immunity for violations of the Fourteenth Amendment. United States v. Georgia, 546 U.S. 151, 158, 126 S. Ct. 877, 881, 163 L. Ed. 2d 650 (2006).[30]

---

[30] The Board of Regents, the Members, and the University Officials argue that it is inappropriate even to consider whether Congress could, through the CRCA, abrogate the States' sovereign immunity under § 5 of the Fourteenth Amendment because, in the CRCA's legislative history, Congress only stated that it was relying on its Article I powers. The Supreme Court has rejected this line of argument. In EEOC v. Wyoming, 460 U.S. 226, 243, 103 S. Ct. 1054, 1064, 75 L. Ed. 2d 18 (1983), the Court held that the extension of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., intended to abrogate the States' sovereign immunity, was valid legislation under the Interstate Commerce Clause of Art. I. Therefore it did not reach the alternative question presented of whether the extension could also be upheld under § 5 of the Fourteenth Amendment. But, it specifically rejected an argument that it could not consider § 5 authority. It declared that "Congress need [not] anywhere recite the words 'section 5' or 'Fourteenth Amendment' or 'equal protection'" because "there is no doubt what the intent of Congress was: to extend the application of the ADEA to the States." Id. at 243 n.18, 103 S. Ct. at 1064 n.18. Then, after the Supreme Court overruled the conclusion in EEOC v. Wyoming that Congress could abrogate the States' sovereign immunity pursuant to the Interstate Commerce Clause, see Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72, 116 S. Ct. 1114, 1131–32, 134 L. Ed. 2d 252 (1996), it later reached the question EEOC v. Wyoming left open. In Kimel v. Florida Board of Regents, 528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000), the Court reached the question of whether the extension of ADEA over the States was valid § 5 legislation, despite the fact that Congress did not expressly state that it was acting under that authority. Id. at 80, 120 S. Ct. at 644. But see Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank, 527 U.S. 627, 642 n.7, 119 S. Ct. 2199, 2208 n.7, 144 L. Ed. 2d 575 (1999) ("Since Congress was so explicit about invoking its authority under Article I and its

35

There are two ways by which Congress may rely upon its § 5 power to abrogate the States' sovereign immunity. First, Congress may "creat[e] private remedies against the States for <u>actual</u> violations of [the Fourteenth Amendment]." <u>Georgia</u>, 546 U.S. at 158, 126 S. Ct. at 880. For example, even though the CRCA deals on its face only with copyright infringement, Congress's abrogation of the States' sovereign immunity in the CRCA is valid if the copyright infringement also violated NABP's constitutional rights. <u>See</u> <u>id.</u> at 158–59, 126 S. Ct. at 881–82 ("Thus, insofar as [the statute] creates a private cause of action for damages against the States for conduct that <u>actually</u> violates the Fourteenth Amendment, [the statute] validly abrogates state sovereign immunity."). Second, Congress may pass prophylactic "legislation which deters or remedies [Fourteenth Amendment] violations . . . even if in the process it prohibits conduct which is not itself unconstitutional," so long as "there [is] a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." <u>City of Boerne v. Flores</u>, 521 U.S. 507, 518–20, 117 S. Ct. 2157, 2163–64, 138 L. Ed. 2d 624 (1997).

---

authority to prevent a State from depriving a person of property without due process of law under the Fourteenth Amendment, we think this omission precludes consideration of the Just Compensation Clause as a basis for the Patent Remedy Act."). Here, there is also no doubt that Congress intended to abrogate the States' sovereign immunity in the CRCA and we will reach the question of whether it may do so under § 5 of the Fourteenth Amendment.

36

The district court held (1) that NABP did not allege an actual violation of the Due Process Clause of the Fourteenth Amendment, and (2) that the CRCA does not constitute valid prophylactic legislation under § 5 of the Fourteenth Amendment, such that NABP's claim for CRCA damages may be maintained. In its brief on appeal, NABP only challenges the court's first holding, that the copyright infringement complained of amounts to a violation of the Due Process Clause.[31] See Georgia, 546 U.S. at 159, 126 S. Ct. at 882.

NABP asserts that the copyright infringement constituted a denial of procedural due process and therefore creates a valid action for damages under Georgia against the Board of Regents, the Members, and the University Officials. Its claim consists of the following allegations taken from its amended complaint. First, "NABP enjoys a constitutionally protected property interest in its copyrights in its Examination Questions." Second, "Defendant's deprivation of NABP's constitutionally protected property interest was done 'without due process of law' because the State of Georgia did not provide adequate remedies for Defendants' infringement, which was perpetrated in a manner that was not random, and was not unauthorized." On appeal, NABP elaborates further to argue that due process

_____

[31] The Board of Regents, the Members and the University Officials argue that United States v. Georgia, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006), does not apply to the CRCA because the CRCA is a narrowly targeted statute focused on the enforcement of a single constitutional right. We see no such limitation in Georgia.

37

entitled it to a pre-deprivation hearing.[32]

The Due Process Clause requires, at a minimum, "notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). The lack of a meaningful opportunity to be heard is at the core of a due process claim because "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990) (emphasis in original) (quoting Parratt v. Taylor, 451 U.S. 527, 537, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981)).

A copyright is a property interest protected under the Due Process Clause. Roth v. Pritikin, 710 F.2d 934, 939 (2d Cir. 1983); cf. Fla. Prepaid, 527 U.S. at 642,

---

[32] Based on these allegations, it is unclear whether NABP's procedural due process claim actually falls under Georgia's framework. In Georgia, the identical conduct that violated the Americans with Disabilities Act also violated the Eighth Amendment. 546 U.S. at 157, 126 S. Ct. at 880–81. Here, the action necessary to infringe a copyright is arguably distinct from the conduct constituting NABP's procedural due process claim. In its simplest form, one infringes a copyright by copying or distributing a work; no amount of process absent the owner's consent avoids liability under the statute. See, e.g., 17 U.S.C. § 106. NABP's due process claim argues that it should have received a pre-deprivation hearing before its copyright was infringed. This alleged conduct—failing to provide a hearing—is not identical to copyright infringement. Therefore, NABP's argument that it was owed a pre-deprivation hearing is not implicated by a strict understanding of what it is to infringe a copyright and thus arguably not covered by Georgia. We need not discuss this argument further, however, because it is clear that NABP has not shown an actual denial of procedural due process.

119 S. Ct. at 2208 (concluding that patents "are surely included within the 'property' of which no person may be deprived by a State without due process of law"). Therefore, "because [NABP has] alleged that [it was] deprived of a constitutionally-protected property interest as a result of state action, due process is implicated and the question becomes what process is due." Grayden, 345 F.3d at 1232. Here, NABP claims that due process required a hearing before its copyrighted materials were copied and distributed.

"Although the Due Process Clause generally requires notice and an opportunity to be heard before the government seizes one's property . . . the Supreme Court 'has rejected the proposition that . . . the State [must always] provide a hearing prior to the initial deprivation of property.'" Reams v. Irvin, 561 F.3d 1258, 1263 (11th Cir. 2009) (emphasis in original) (internal citation omitted) (quoting Parratt, 451 U.S. at 540–41, 101 S. Ct. at 1915–16); see also Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).

"[T]he feasibility of predeprivation procedures [i]s the central question in determining [whether predeprivation procedures must be provided]." Rittenhouse v. DeKalb Cnty., 764 F.2d 1451, 1455 (11th Cir. 1985); see also Carcamo v. Miami-Dade Cnty., 375 F.3d 1104, 1105 n.4 (11th Cir. 2004). So long as the State provides adequate post-deprivation remedies, "due process d[oes] not require

pre-deprivation hearings where the holding of such a hearing would be impracticable, that is, where the deprivation is the result of either a negligent or an intentional deprivation of property." McKinney v. Pate, 20 F.3d 1550, 1562–63 (11th Cir. 1994) (en banc).

Pre-deprivation process is impractical "where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure," because "the state cannot know when such deprivations will occur." Hudson, 468 U.S. at 532, 533, 104 S. Ct. at 3203. These "established state procedure[s]" are typically established for the purpose of depriving citizens of their property. Rittenhouse, 764 F.2d at 1455. For example, the plaintiff-tenants in Grayden were evicted from their apartments because the city's code inspector found various code violations. 345 F.3d at 1233–36. They argued that they deserved a hearing to challenge these findings prior to eviction. Id. Although the court ultimately rejected the plaintiffs argument, id. at 1236, the facts present an applicable paradigm: a government actor (city inspector) acting pursuant to a government policy (regular inspections) that is specifically designed to deprive people of property interests (issuing an eviction notice, upon finding code violations, that deprives tenants of their rights as lessees), see id. at 1234–35.

The amended complaint alleges that Professor Warren intentionally infringed

40

NABP's copyrights by collecting NAPLEX questions and using them to prepare course materials. It further alleges that the University Officials either failed to discover the infringement, or, having discovered it, failed to cease the infringement during three activities: (1) approving the review course materials, (2) providing administrative support to Warren, and (3) distributing the materials to students. Critically, the amended complaint does not allege that any of the University Officials were acting pursuant to an established state procedure designed to deprive individuals of their copyrights. See Rittenhouse, 764 F.2d at 1455 ("[E]xamples of the 'established state procedure' principle are all cases in which the established state procedure itself effected the deprivation . . . ."). Instead, it refers to these three activities as the State's "procedures" that deprived NABP of its property.

But NABP cannot just point to any procedure. It must identify an established state procedure which has as its purpose the deprivation of a protected interest. See id. (holding that pre-deprivation process was not feasible when "[t]here is no suggestion that the purpose of the challenged emergency procedures is to deprive anyone of anything, and the procedures cannot be said to contemplate the deprivation of any protected interest"). It is only when the purpose of a state procedure is to effect the deprivation of a protected interest that pre-deprivation process becomes feasible—only then is the State in a position to foresee the

41

deprivation.  See id. at 1454–56 (finding that the defendant's emergency procedure to repair leaky water meters was not a relevant procedure because it was not designed to deprive people of property and did not contemplate depriving anyone of property).

Here, there is no allegation that the University Officials are actually permitted to infringe upon another's copyright in approving the NAPLEX review course or when distributing course materials.  Neither is it the purpose of these procedures to allow copyright infringement.  Thus, this is the quintessential situation where pre-deprivation process is impracticable, because "'[t]he loss of property, although attributable to the State as action under "color of law" is in almost all cases beyond the control of the State.'"  Hudson, 468 U.S. at 532, 104 S. Ct. at 3203 (quoting Parratt, 451 U.S. at 541, 101 S. Ct. at 1916).

NABP also claims that the its deprivation was not "random and unauthorized" because, given Professor Warren's history with NABP, it was foreseeable that he would attempt to infringe its copyrights again.  This argument reflects a fundamental misunderstanding of our inquiry.  It is irrelevant whether it was foreseeable that Warren would attempt to infringe upon NABP's copyrights. The real issue is whether it is foreseeable that individuals—individuals generally, as opposed to NABP specifically—would be deprived of property interests when the

state actors act pursuant to the established state procedure. See id. at 534, 104 S. Ct. 3204 ("Whether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation process.").

Indeed, we cannot imagine how a State would fashion a pre-deprivation hearing under the facts alleged here. If a hearing could ever occur, it would likely occur during the approval of review course materials because only then does the state actor review the course materials and stand in a position to evaluate whether the materials infringe a copyright. This approval process, however, does not—and indeed, cannot—determine whether the State has violated copyright laws. Doing so would require the state actor to know the content of every relevant copyright and then compare that copyright to the proposed review course materials.[33]

In effect, NABP's argument would require the state officials to notify every possible copyright holder to comment on the review materials. This contemplated procedure is a far cry from the Grayden paradigm in which the state actor knows not only that he is depriving someone of property, but also the identity of the aggrieved party. With only the proposed review course materials before it, how

_____

[33] NABP also argues that the means by which an outsider can purchase the course materials is itself a "procedure" relevant for this analysis. This "procedure" is inadequate for the reasons articulated above and is an even less suitable forum for a pre-deprivation hearing.

could the State know that copyright infringement was about to occur—but had not yet—so as to provide the copyright holder notice and an opportunity to be heard? See Rittenhouse, 764 F.2d at 1455–56 (pre-deprivation process is not feasible when the identity of a potential plaintiff becomes apparent only after the deprivation of a protected interest). Accordingly, we agree with the district court and find that pre-deprivation process was not feasible under the facts alleged in the amended complaint.[34]

Thus, NABP could only establish an actual due process violation if it sufficiently alleged that the State failed to provide adequate post-deprivation remedies. Id. at 1456. But NABP does not argue on appeal that Georgia's post-deprivation remedies are inadequate. The district court held that Georgia provided adequate post-deprivation remedies, including a legislative "claims review procedure" and remedies under the Georgia Tort Claims Act and for breach of contract. NABP has not challenged this holding.[35] In fact, following the district

---

[34] NABP maintains that the 1995 settlement agreement provided the State with adequate notice that, at the very least, NABP's copyrights were likely to be infringed and therefore the State needed to provide NABP with a hearing before using the offending course materials. This argument again ignores our cases that require the procedure in question to have the purpose of depriving individuals of property. See Rittenhouse v. DeKalb Cnty., 764 F.2d 1451, 1455 (11th Cir. 1985). Furthermore, the 1995 settlement agreement effectively provided NABP with this right; it allowed NABP to examine course materials upon demand, presumably to determine whether they included NABP's copyright-protected questions.

[35] NABP avers in its Reply Brief that it has not conceded this point but rather that it is irrelevant. In any event, it has not argued on appeal that its post-deprivation remedies are inadequate. Therefore, regardless of its reasons for failing to challenge the district court's ruling

court's order dismissing these claims, NABP sued the Board of Regents and Warren for breach of contract in the Superior Court of Fulton County.

Therefore, we hold that the amended complaint failed to allege a due process violation and consequently did not allege a damages claim that may be brought under the CRCA pursuant to <u>Georgia</u>.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED, in part, and VACATED and REMANDED, in part.

---

on this point, it has waived the argument.